CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 21, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| SIGNAL NATIONAL LLC, *et al.*,[1] | § | Case No. 26-90190 (ELM) |
| Debtors. | § | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE STATUS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

[2] Capitalized terms used but not yet defined herein shall have the meanings ascribed to them later in this Interim Order.

States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 4001-1(a), 4001-1(b), 5005-1, and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and Section D of the Procedures for Complex Cases in the Northern District of Texas (together with the Local Rules, the "Bankruptcy Local Rules"), seeking, among other things:

(a) entry of this interim order (this "Interim Order"):

i. authorizing the use of the Cash Collateral (as defined below) of AAV2024 LLC, Advantage Capital Holdings LLC, Dacian Master Fund LP, Haymarket Insurance Company, and National Founders, LP (collectively, the "DIP Lenders," and in their capacity as pre-petition lenders, the "Pre-Petition Lenders"), in their roles as prepetition lenders, in accordance with the terms and conditions set forth herein solely in accordance with the Approved Budget;

ii. authorizing the Debtors to grant adequate protection to entities holding perfected liens and security interests in the Debtors' assets (collectively, the "Pre-Petition Secured Parties"), including the Pre-Petition Lenders, with respect to any post-petition diminution in value of their interests in their pre-petition collateral arising from, among other things, the Debtors' sale, use, or lease of such collateral (including the Cash Collateral);

iii. authorizing the Initial Debtors to borrow, and the Subsequent Debtors to guaranty, post-petition financing on a super-priority, senior secured and, upon entry of the Final Order, on a priming basis (the "DIP Credit Facility") from the DIP Lenders pursuant to that certain Summary of Principal Terms and Conditions, dated August 18, 2026, attached hereto as **Exhibit 2** (the "DIP Term Sheet") and the related DIP Loan Documents[3] as follows:

[3] For purposes of this Interim Order, the "DIP Loan Documents" shall include the DIP Term Sheet and this Interim Order. For the avoidance of doubt, the "DIP Loan Documents" shall not include any prepetition agreements with the Pre-Petition Lenders, and such term specifically excludes the Priming Superpriority Debtor-in-Possession Credit Agreement, dated as of June 9, 2026, by and among 777 Partners LLC, 600 Partners LLC, and Signal National LLC as borrowers and the guarantors party thereto, and the Pre-Petition Lenders.

a. ***DIP Loans***. The DIP Loans shall consist of a new-money line of credit in an aggregate principal amount of up to $8,600,000.00;

b. ***Interim Facility.*** From the date of this Interim Order until the date a Final Order is entered (the "Interim Period"), the maximum amount to be drawn shall be limited to $600,000, subject to compliance with the terms, conditions, and covenants described in this Interim Order and the Approved Budget;

iv. authorizing and directing the Debtors to use the proceeds of the DIP Credit Facility as expressly provided in the DIP Loan Documents and solely in accordance with the Approved Budget;

v. granting valid, enforceable, non-avoidable, and automatically fully perfected DIP Liens on, and security interests in, all of the Debtors' property (collectively, the "Debtor Assets"), including, subject to Final Order, priming liens on certain of the DIP Collateral and liens on the proceeds of DIP Causes of Action pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out and with the relative priorities set forth in this Interim Order;

vi. granting allowed superpriority administrative claims to the DIP Lenders pursuant to Section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the Debtors;

vii. subject to approval pursuant to the entry of the Final Order, approving such relief, waiving (a) the Debtors' right to surcharge the Pre-Petition Collateral and the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code, (b) the equitable doctrine of marshalling and other similar doctrines, and (c) any right of the Debtors under the "equities of the case" exception under Section 552(b) of the Bankruptcy Code;

viii. modifying the automatic stay of Bankruptcy Code Section 362 (the "Automatic Stay") to the extent necessary to implement and effectuate the relief requested in the Motion and the terms and provisions of the DIP Loan Documents, including this Interim Order;

ix. waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Interim Order;

x. finding the DIP Lenders to be "good faith" lenders pursuant to Section 364(e) of the Bankruptcy Code, solely with respect to the DIP Facility and post-petition use of the Pre-Petition Collateral, and granting all protections afforded therein;

xi. authorizing the Debtors that filed chapter 11 petitions on August 9, 2026 (collectively, the "Initial Debtors") to cause any of their respective direct

or indirect subsidiaries that files a Chapter 11 Case (collectively, the "Subsequent Debtors") to promptly execute and deliver to ACM Delegate LLC (the "Agent") and the DIP Lenders a "Guarantor Joinder" after which such Subsequent Debtor (a) shall be deemed an additional guarantor hereunder with the same force and effect as if originally named a guarantor hereunder; and

xii. scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of a further order (the "Final Order") on the Motion, approving the relief requested on a final basis, and, in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion;

(b) entry of the Final Order; and

(c) such other and further relief as is just and proper.

The Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the *Declaration of Mark Shapiro in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Status, and (III) Granting Related Relief* (the "DIP Declaration"), and the evidence submitted and arguments made at the Interim Hearing held on August 11 and 19, 2026; and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d) and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing, otherwise is fair and reasonable and in the best interests of the Debtors and their Estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Term Sheet is a sound

and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A. *Petition Date*. On August 9, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases (collectively, these "Chapter 11 Cases") with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"). The Chapter 11 Cases are being jointly administered. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, the United States Trustee for the Northern District of Texas (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (a "Creditors' Committee") in these Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

B. *Jurisdiction and Venue*. This Court has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is permissible before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. [*Reserved*].

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

*D. Findings Regarding the Pre-Petition Lenders' Consent to Priming.*

i. The Pre-Petition Lenders have consented to the adequate protection and, upon entry of the Final Order, the priming of their respective Pre-Petition Liens, as provided for in this Interim Order; *provided, however,* that the consent of the Pre-Petition Lenders to the priming of their respective Pre-Petition Liens is expressly conditioned upon the entry of the Final Order and the use of certain Pre-Petition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Interim Order and such consents shall not be deemed to extend to any other replacement financing or debtor in possession financing other than the DIP Credit Facility; *provided*, *further*, that such consent shall be of no force and effect in the event the Final Order is not entered (or is entered and subsequently reversed, modified, vacated, or stayed).

ii. The Pre-Petition Lenders have no objection to the DIP Credit Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Interim Order. Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Lenders are or will be adequately protected with respect to any non-consensual use of the assets on which the Debtors have granted security interests in or liens on for the benefit of the Pre-Petition Lenders (collectively, the "Pre-Petition Collateral"), including any Cash proceeds of the Pre-Petition Collateral, and each Pre-Petition Lender expressly reserves the right to seek adequate protection of its interests in its sole discretion.

*E. Findings Regarding DIP Credit Facility and the Use of Cash Collateral.*

(a) *Request for Post-Petition Financing and Use of Cash Collateral.* The Debtors seek authority to enter into and perform under the DIP Credit Facility. The DIP Lenders

shall have no obligation to make loans or advances except pursuant to the terms and conditions set forth herein and in the other DIP Loan Documents and no obligation to waive any conditions required thereunder. The Debtors also seek authority to use Cash Collateral on the terms described herein and in accordance with the Approved Budget, which shall be subject to Permitted Variances (as defined below), to administer their Chapter 11 Cases and fund their operations.

(b) *Priming of the Pre-Petition Liens.* The Debtors assert that the priming of the Pre-Petition Liens on the Pre-Petition Collateral under Bankruptcy Code Section 364(d), as provided herein and in consideration of the Pre-Petition Lenders' agreement to the priming liens, adequate protection and Carve-Out, as further described below, will enable the Debtors to obtain the DIP Credit Facility and to continue to operate their businesses for the benefit of their Estates and creditors. The Pre-Petition Lenders are entitled to receive adequate protection as set forth in this Interim Order pursuant to Bankruptcy Code Sections 361, 363, and 364 for any diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral).

(c) *Need for Post-Petition Financing and Use of Cash Collateral.* The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their business in the ordinary course or to implement a process to consummate a chapter 11 plan in these Chapter 11 Cases without the financing requested in the Motion. The Debtors' ability to maintain business relationships with vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, to implement and consummate a chapter 11 plan in these Chapter 11 Cases and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize and preserve the value of their respective Estates for the benefit of all creditors of the Estates. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Credit Facility with the DIP Lenders and to use Cash Collateral as set

forth in this Interim Order and the DIP Term Sheet is vital to the preservation and maintenance of the going concern value of the Debtors and the Debtors' ability to maximize value for all stakeholders. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they, and their Estates, will suffer immediate and irreparable harm. Accordingly, the Debtors have an immediate need to obtain the DIP Loans and to use Cash Collateral to, among other things, permit the orderly continuation of the operation of their business, minimize the disruption of their business operations, and preserve and maximize the value of the Debtors' Estates in order to maximize value for all creditors of the Estates.

(d) *No Credit Available on More Favorable Terms*. As set forth in the DIP Declaration and as demonstrated at the Interim Hearing, given their current financial condition, financing arrangements, and capital structure, during the competitive bid process run by the Debtors with the assistance of their professionals, the Debtors were not presented with a proposal for necessary financing from sources other than the DIP Lenders on terms more favorable than those set forth in the DIP Loan Documents. The Debtors have been unable to reasonably obtain adequate unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain sufficient secured credit from other sources solely: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code Sections 503(b), 507(a), and 507(b); (b) secured only by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Financing by the DIP Lenders on a post-petition basis during the interim period is not otherwise available without granting to the DIP Lenders: (x) automatically perfected security interests in and liens on the post-petition collateral authorized under this Interim Order with the priorities set forth herein; (y)

superpriority claims and liens; and (z) the other protections to the extent set forth in this Interim Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the DIP Credit Facility, including, without limitation, the DIP Loans, represents the best financing available to them at this time, and, for interim approval purposes, is inherently fair to the estates.

(e) *Use of Proceeds of the DIP Credit Facility.* As a condition to entry into the DIP Loan Documents, the extensions of credit under the DIP Credit Facility and the authorization to use Cash Collateral, the DIP Lenders and the Pre-Petition Lenders require, and the Debtors have agreed, that proceeds of the DIP Credit Facility and Cash Collateral shall be used in accordance with the terms of this Interim Order and the DIP Loan Documents, and the Approved Budget, which shall be subject to Permitted Variances, solely to (i) provide working capital and for general corporate purposes of the Debtors during the Chapter 11 Cases; (ii) pay the fees, costs and expenses of the estate professionals retained in the Chapter 11 Cases as set forth in the Approved Budget and approved by the Bankruptcy Court; (iii) make all permitted payments of costs of administration of the Chapter 11 Cases; and (iv) pay such pre-petition expenses solely as consented to by each of the DIP Lenders and approved by the Bankruptcy Court. Based upon the record presented to this Court by the Debtors, (a) the Debtors have prepared and delivered the budget attached hereto as **Exhibit 1** (such budget and any subsequent approved budget shall constitute without duplication, the "Approved Budget"), (b) the Approved Budget was prepared by the Debtors, with the assistance of their professional advisors and management, as well as review and approval of the DIP Lenders, and (c) the Approved Budget (as the same may be amended or extended solely as provided for herein) sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtors believe in good faith that the

Approved Budget, subject to the Permitted Variances, is achievable and will allow the Debtors to operate in chapter 11 during the term of the Approved Budget. The DIP Lenders are relying upon the Debtors' compliance with the Approved Budget, subject to the Permitted Variances, in determining to consent to the use of Cash Collateral solely as contemplated in this Interim Order and to enter into (or as the case may be, consent to) the DIP Credit Facility as provided for in this Interim Order.

(f) *The DIP Credit Facility Terms and Conditions are Fair and Reasonable.* Based on the Motion, the DIP Declaration, and the record presented to the Court at the Interim Hearing, the terms and conditions of the DIP Credit Facility pursuant to the DIP Loan Documents and the use of the DIP Collateral and the Pre-Petition Collateral, including the Cash Collateral, pursuant to this Interim Order are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence, or violation of public policy or law. Use of Cash Collateral and any credit to be extended as set forth in the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code Section 364(e), and the DIP Lenders are therefore entitled to the protections and benefits of Bankruptcy Code Section 364(e) and this Interim Order.

(g) [*Reserved*].

(h) *Bankruptcy Code Sections 506(c) and 552(b).* The Debtors have agreed that, subject to approval pursuant to the entry of a final order, in light of (a) the agreement of the DIP Lenders and the Pre-Petition Lenders to subordinate their liens and claims (including, but not

limited to, superpriority claims), as applicable, to the Carve-Out; (b) the Pre-Petition Lenders' agreement to consent to the use of Cash Collateral; and (c) the Approved Budget covering the administrative costs projected by the Debtors, the DIP Lenders, with respect to the DIP Collateral, and the Pre-Petition Lenders, with respect to the Pre-Petition Collateral, as applicable, are entitled to a waiver of (x) the provisions of Bankruptcy Code section 506(c), (y) any "equities of the case" claims under Bankruptcy Code section 552(b), and (z) the equitable doctrine of "marshaling" or any similar doctrine.

(i) *Adequate Protection.* The Pre-Petition Secured Parties are entitled, pursuant to Bankruptcy Code Sections 361, 362, 363, and 364, to receive adequate protection against any diminution in value of their respective interests in the Pre-Petition Collateral (including Cash Collateral), to the extent set forth in Paragraph 17 of this Interim Order.

(j) *Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Loan Documents, including this Interim Order, and the provision of the DIP Credit Facility and the post-petition use of Cash Collateral and Pre-Petition Collateral pursuant to this Interim Order were negotiated in good faith and at arm's length among the Debtors, the Agent, and the DIP Lenders with the assistance and counsel of their respective advisors. Credit to be extended under the DIP Credit Facility pursuant to this Interim Order shall be deemed to have been allowed, made, or extended in good faith by the DIP Lenders within the meaning of Section 364(e) of the Bankruptcy Code.

(k) *No Control.* The Court finds on an interim basis only, based upon the existing evidence before the Court, and for reasons stated on the record which are incorporated herein, and subject to reconsideration at a final hearing, that in making the decision to finance the Debtors' continued business operations through the DIP Credit Facility, to permit the Debtors to

use Cash Collateral for the limited purposes set forth herein, and in approving the Approved Budget, the DIP Lenders, as applicable, did not control the Debtors or their properties or operations, or serve as control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the DIP Loan Documents.

i. *Good and Sufficient Cause Shown.* Good and sufficient cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business and ongoing operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) maximize and stabilize the value of the Debtors' assets and avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets. Absent the immediate grant by this Court of the interim relief sought by the Motion, the Debtors will be immediately and irreparably harmed pending the Final Hearing. The terms of the DIP Credit Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

ii. *Final Hearing.* At the Final Hearing, the Debtors will seek final approval of the proposed DIP Credit Facility and use of Cash Collateral pursuant to the Final Order, which shall be subject to the terms and conditions of the DIP Loan Documents. Notice of the Final

Hearing and the Final Order shall be provided in accordance with this Interim Order, and no further notice, except as provided by this Interim Order, shall be required.

iii. *Notice.* Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors as indicated in the Motion. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing is appropriate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Motion Granted*. The interim relief sought in the Motion is granted, the DIP Credit Facility is authorized and approved, and the use of Cash Collateral is authorized, in each case on an interim basis and as set forth herein and subject to the terms and conditions set forth in this Interim Order. All objections and reservations of rights with respect to entry of this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

2. *Authorization of the DIP Credit Facility and the DIP Loan Documents*.

(a) The Debtors are hereby expressly authorized and empowered to immediately borrow, or guaranty, as applicable, and obtain, on a joint and several basis, DIP Loans under the DIP Credit Facility, and the Debtors (on a joint and several basis) are hereby authorized and empowered to incur all other indebtedness and obligations owing to the DIP Lenders on the terms and subject to the conditions and limitations set forth in the DIP Loan Documents and this

Interim Order, up to the maximum aggregate amount of $600,000 subject to the Approved Budget (with any Permitted Variances) from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order (with respect to all Debtors), or (ii) February 22, 2027 (the "Maturity Date").

(b) Upon entry of this Interim Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered to perform all of their obligations hereunder. The Debtors are hereby authorized to borrow money as provided herein, which shall be used for all limited purposes permitted hereunder and under the DIP Term Sheet (and subject to and in accordance with the Approved Budget). Upon entry of this Interim Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered, and the automatic stay imposed by Bankruptcy Code Section 362 is hereby lifted to the extent necessary, to: (i) perform and comply with all of the terms, conditions, and covenants set forth herein; (ii) execute and deliver all certificates, reports, statements, and other agreements and documents required or contemplated by this Interim Order (including, without limitation, documents required for the Debtors' performance of their obligations under the DIP Credit Facility and the creation and perfection of liens granted or contemplated therein); and (iii) incur all obligations hereunder and perform all other undertakings and acts required or contemplated by this Interim Order.

(c) [*Reserved*].

(d) The advances under the DIP Credit Facility and the use of Cash Collateral shall be used in each case solely in a manner consistent with the terms and conditions of the DIP Term Sheet and this Interim Order and, in all respects, in accordance with and as may be limited

by the Approved Budget (subject to the Permitted Variances), solely as follows (in each case solely as provided for in the Approved Budget):

(i) [*Reserved*];

(ii) for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, including the investigation of liens and claims, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors; and

(iii) for making other payments as expressly provided in this Interim Order and the Approved Budget (including the Carve-Out, which will only be available upon entry of the Final Order, for the payment of the Debtors' and Creditors' Committees' Professional Fees, solely as set forth in the Approved Budget).

3. *DIP Obligations.* The DIP Loan Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtors (the "DIP Obligations"), enforceable against each Debtor and its respective estate in accordance with the terms of this Interim Order and the other DIP Loan Documents, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). The DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Lenders, in such capacities, in each case, under, or secured by, the DIP Loan Documents (including this Interim Order), including all principal, interest, and other amounts under the DIP Loan Documents (including this Interim Order). The Debtors shall be jointly and severally liable for the DIP Obligations. Except as permitted hereby, no obligation, payment, transfer or grant of security hereunder or under the other DIP Loan Documents to the DIP Lenders (including their Representatives) shall be stayed, restrained, voidable, avoidable or

recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under any of Sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, claim, counterclaim, cross-claim or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or Entity. Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents, the provisions of this paragraph shall not apply to any pre-petition loans or advances by the Pre-Petition Lenders.

4. *Interest.* The rates of interest to be charged for the DIP Loans under the DIP Credit Facility shall be the rates set forth in the DIP Term Sheet and shall be calculated in the manner and payable at the times set forth therein. The Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, and other amounts described above and in the DIP Loan Documents as such amounts, to the extent possible, become due without need to obtain further Court approval, and the Debtors shall be jointly and severally obligated to pay all such amounts, and satisfy all such obligations, which in each case shall constitute DIP Obligations hereunder and under the applicable DIP Loan Documents.

5. *Amendment of DIP Loan Documents.* The Debtors and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Loan Documents, any modification of the DIP Loan Documents; *provided*, *however*, that any material modification or amendment to the DIP Loan Documents shall be subject to providing notice of such material modification or amendment to counsel to the DIP Lenders, the U.S. Trustee, and any Creditors'

Committee, each of which shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the parties receiving notice agree in writing to a shorter period. If no timely objection is filed with the Court within such five (5) day notice period to the proposed material modification or amendment to the DIP Loan Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period. If a timely objection is filed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

6. *Conditions Precedent.* The DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents unless the conditions precedent to such loan or extension of credit under the DIP Loan Documents have been satisfied in full or waived in accordance with the DIP Loan Documents. The Debtors shall have no ability to use Cash Collateral unless the Debtors are in compliance with all obligations under the DIP Loan Documents and this Interim Order (including, without limitation, that no Event of Default has occurred).

7. *Approved Budget Maintenance.*

(a) *Amendments to Approved Budget*. The Approved Budget and any supplemental Approved Budget may be modified, amended and updated from time to time in accordance with this Interim Order, and, once approved in writing by the Agent (acting at the direction of the DIP Lenders), shall supplement and replace the then-Approved Budget. If any revised budget is not approved in writing by the Agent pursuant to this Interim Order, the then-existing Approved Budget shall remain in full force and effect. A copy of any updated Approved Budget shall be filed with the Court within one (1) business day after it has been approved in

writing by the Agent (acting at the direction of the DIP Lenders in accordance with the terms of the DIP Loan Documents).

(b) *Permitted Variances*. The Debtors shall comply with the Approved Budget (subject to the Permitted Variances provided in the next immediate sentence), and shall not make any payments, or incur any obligations or liabilities, that are not projected and provided for in the Approved Budget. The Debtors shall not permit payments for any Measuring Period (as defined below) to exceed one hundred twenty percent (120%) of the respective amounts, measured on an aggregate basis, as set forth for such Measuring Period; *provided* that the Debtors shall not permit expenditures for estate professional fees to exceed one hundred ten percent (110%) of the amount allocated for such expenditures in the Approved Budget for such Measuring Period (but notwithstanding anything to the contrary set forth in this Interim Order or the DIP Term Sheet, the Debtors may incur estate professional fees and expenses that exceed the amount in the Approved Budget and any favorable variance from a Measuring Period may be used to pay professional fees and expenses incurred in a different Measuring Period). These variances (the "Permitted Variances") shall be measured and tested every other week based on a rolling four-week period (the "Measuring Period"); *provided*, *however*, that the first Measuring Period shall be for the period from the Petition Date to the date that is approximately two weeks thereafter.

(c) *Reporting Obligations*. The Debtors shall comply with all reporting requirements set forth in the DIP Loan Documents, including, without limitation, providing the Bi-Weekly Budget Reports.

8. [*Reserved*].

9. *Bankruptcy Milestones.* The following shall constitute "Bankruptcy Milestones" as defined in the DIP Term Sheet, in each case measured from the Petition Date for the Initial

Debtors, and the Debtors shall strictly comply with same unless extended in writing by the Agent (acting at the direction of the Required Lenders):

> (a) On or before the date that is thirty-five (35) days following entry of the Interim DIP Order, the Debtors shall have obtained entry of the Final Order in form and substance acceptable to the DIP Lenders in all respects.
>
> (b) On or before November 6, 2026, the Debtors shall have filed in the Court a Chapter 11 plan (the "Plan") and associated Disclosure Statement (the "Disclosure Statement") along with a motion seeking, among other things, approval of the Disclosure Statement and approval of solicitation procedures and to set a hearing for confirmation of the Plan, all in a form and substance acceptable to the DIP Lenders.
>
> (c) On or before January 18, 2027, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the DIP Agent, confirming the Plan in form and substance acceptable to the DIP Lenders.
>
> (d) On or before the date that is fourteen (14) days after entry of the Confirmation Order, the Plan shall have become effective.

Failure to timely satisfy any Bankruptcy Milestone, unless waived in writing by the Agent (acting at the direction of the DIP Lenders), shall constitute an Event of Default under this Interim Order and under the DIP Loan Documents.

10. *DIP Liens and Superpriority Claims.*

(a) *DIP Lien Grant.* To secure the prompt payment and performance of any and all DIP Obligations of the Debtors to the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Lenders shall have and are hereby granted, subject solely to the Carve-Out, effective as of and from the Petition Date, valid, binding, enforceable, continuing, non-avoidable and automatically perfected security interests and liens (such security interests and liens collectively, "DIP Liens") securing any and all portions of the DIP Loans as follows:

> (i) senior first-priority DIP Liens on Debtor Assets that were not subject to valid, perfected, and non-avoidable Liens as of the Petition Date (the "Unencumbered DIP Collateral"), which shall include, only if authorized pursuant to a Final Order, the proceeds of the following:

(a) any and all claims, damages, remedies, causes of action, reimbursement Claims, contribution Claims, recoupment rights, debts, judgments, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, commercial tort claims, counterclaims and cross claims, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable, asserted or unasserted, direct or indirect, choate or inchoate, reduced to judgment or otherwise, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, Law, equity, or otherwise pursuant to any theory of Law or otherwise, and shall include, for the avoidance of doubt: (I) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by Law or in equity; and (II) any Claim based on, or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by Law or in equity (the "Causes of Action"); and

(b) the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (the "Chapter 5 DIP Collateral," and together with the Causes of Action, the "DIP Causes of Action");[5] and

(ii) junior DIP Liens on all other assets of the Debtors subject to valid, properly perfected, and non-avoidable Liens existing as of the Petition Date (all of the foregoing, together with the Unencumbered DIP Collateral, the "DIP Collateral").

Subject to approval pursuant to entry of the Final Order, each DIP Lender shall individually receive first-priority priming DIP Liens (the "Priming Liens") to secure an amount equal to such DIP Lender's ratable portion of the then-outstanding DIP Loans, with such Priming Liens attaching solely to the Pre-Petition Collateral of such DIP Lender in which such DIP Lender held

[5] For the avoidance of doubt, the liens securing the DIP Causes of Action shall not exceed the DIP Obligations.

a first priority security interest as of the Petition Date (the "Existing First-Priority DIP Collateral") in its capacity as a Pre-Petition Lender.

(b) The DIP Liens shall be: (i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected first-priority security interests in and liens on all Unencumbered DIP Collateral; (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected junior liens on all other DIP Collateral, subject only to valid, properly perfected, and non-avoidable Liens in existence on the Petition Date; and (iii) subject to approval in a Final Order, pursuant to section 364(d)(1) of the Bankruptcy Code with respect to the Priming Liens, valid, binding, enforceable, non-avoidable, and automatically perfected senior priming security interests in and liens on each applicable DIP Lenders' Existing First-Priority DIP Collateral, in each case subject and subordinate only to the Carve-Out.

(c) *Post-Petition Lien Perfection*. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) holding any deposit account of the Debtors (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lenders or the Pre-Petition Lenders elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Lenders and the Pre-Petition Lenders, as applicable, is authorized to perform such Perfection Act, and the Debtors are authorized to perform such Perfection Acts to the extent necessary or required by the DIP Lenders or Pre-Petition Lenders,

which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lenders and/or the Pre-Petition Lenders may choose, or may choose to direct the Debtors, to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Lenders and/or the Pre-Petition Lenders so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the DIP Liens or the Adequate Protection Liens granted herein by virtue of the entry of this Interim Order.

(d) Notwithstanding any provision to the contrary in this Interim Order, the Motion, or the DIP Term Sheet, the DIP Collateral and the Cash Collateral (and any DIP Liens, security interests, superpriority administrative expense claims, or replacement liens granted to the DIP Lenders or Pre-Petition Lenders herein) shall explicitly exclude the Disputed Property,[6] pending further order of this Court or a final, non-appealable adjudication determining the estates' interest in such property. Nothing contained in this Interim Order, the Motion, or the DIP Credit Facility shall operate as an adjudication, waiver, release, impairment, or priming of DASIR 2 LLC's ("DASIR 2") rights, claims, or defenses regarding the Disputed Property, if any. DASIR 2's right to assert that the Disputed Property (and any identifiable proceeds traceable thereto) is

[6] "Disputed Property" shall mean proceeds derived from those Purchased Receivables (as defined in the Sale Agreement dated as of May 7, 2021, between Signal Medical Receivables LLC, as Seller, and Signal SML 4 LLC, as Purchaser) that were subject to the May 15, 2025, foreclosure auction by Leadenhall Life Insurance Linked Investment Fund Plc and assigned to DASIR 2, LLC in connection therewith.

subject to a constructive trust, resulting trust, or other equitable ownership interest, and therefore excluded from property of the Debtors' estates pursuant to 11 U.S.C. § 541(d), is fully preserved. Until such time as a final, non-appealable order is entered by a court of competent jurisdiction determining the ownership of the Disputed Property, the Debtors shall use reasonable best efforts to cause their non-Debtor subsidiaries and affiliates, as applicable, to segregate and hold any Disputed Property in their possession in a separate depository account. The Debtors shall not use, sell, lease, or encumber the Disputed Property or its traceable proceeds to fund operations, pay DIP professional fees, or satisfy any prepetition or postpetition obligations without the express written consent of DASIR 2 or further order of this Court.

11. *Superpriority Administrative Expense Claims.* For the applicable DIP Obligations, whether now existing or hereafter arising pursuant to this Interim Order, the applicable DIP Loan Documents, or otherwise, subject only to the Carve-Out, the DIP Lenders are granted an allowed superpriority administrative expense claim in the Debtors' Estates pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 and, upon entry of a Final Order, sections 506(c) and 552(b) (the "<u>DIP Superpriority Claims</u>").

12. *Protections of Rights of the Agent and DIP Lenders.* Unless the Required Lenders shall have provided their prior written consent, there shall not be entered in the Chapter 11 Cases

or any Successor Cases any order (including any order confirming a plan of reorganization or liquidation) that authorizes (i) the obtaining of credit or the incurring of indebtedness secured by a lien on any DIP Collateral or entitled to administrative priority status senior to or *pari passu* with the DIP Liens or the DIP Superpriority Claims, other than the Carve-Out, unless the DIP Obligations are simultaneously paid or discharged in full, or (ii) the use of Cash Collateral for any purpose not permitted under the DIP Loan Documents and this Interim Order, in each case unless the Required Lenders otherwise agree in writing.

13. *Proceeds of Subsequent Financing.* If the Debtors, any trustee, or any examiner or responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases obtains credit or incurs debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents or this Interim Order, all cash proceeds derived therefrom shall immediately be applied in accordance with this Interim Order, the DIP Loan Documents, and the DIP Loan Intercreditor Agreement.

14. *Disposition of DIP Collateral.* Except as otherwise provided herein or in the DIP Loan Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any DIP Collateral outside the ordinary course of business without the consent of the Required Lenders or further order of the Court, until the DIP Obligations are paid in full in cash or otherwise discharged.

15. *Maintenance of DIP Collateral; Cash Management.* Unless otherwise consented to by the Agent at the direction of the Required Lenders, until the DIP Obligations are paid in full in cash and all DIP Commitments are terminated, the Debtors shall (a) insure the Pre-Petition Collateral as required under the applicable Pre-Petition Loan Documents and the DIP Collateral as required under the DIP Loan Documents and (b) maintain the cash management system in effect

as of the Petition Date, as modified by this Interim Order, any other order of this Court, or as otherwise agreed by the Agent at the direction of the Required Lenders.

16. *Cash Collateral*. Subject to the terms and conditions of this Interim Order, pursuant to Bankruptcy Code section 363(c)(2), the Debtors are authorized to use Cash Collateral solely in accordance with the DIP Loan Documents and as may be limited by the Approved Budget (subject to the Permitted Variances). Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Interim Period without the prior written approval of the DIP Lenders.

17. *Pre-Petition Lenders' Adequate Protection.* As adequate protection for the interests of the Pre-Petition Secured Parties in the Debtors' property, including Cash Collateral, the Pre-Petition Secured Parties are being provided with adequate protection (the "Adequate Protection Obligations") as set forth below:

(a) *Adequate Protection Liens*. Solely to the extent of any diminution in value ("Diminution in Value") of their respective interests in their applicable collateral, pursuant to sections 361 and 363(c) of the Bankruptcy Code, the Debtors shall grant the Pre-Petition Secured Parties valid and perfected replacement security interests in, and liens on, their respective pre-petition collateral (the "Adequate Protection Liens"), which security interests and liens shall be subject to and subordinate in all respects to the Carve-Out. The Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully-perfected as of the applicable petition date for the applicable Debtor, and not subject to subordination or avoidance for any cause or purpose in these Chapter 11 Cases. The Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases. Subject

solely to the Carve-Out, the Adequate Protection Liens (A) shall not be made subject to or *pari passu* with any lien or security interest by any court Order heretofore or hereafter entered in these Chapter 11 Cases (unless with the consent of the Pre-Petition Lenders); (B) upon entry of a Final Order, shall not be subject to section 506(c) of the Bankruptcy Code; (C) shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code; and (D) no lien or interest avoided and preserved for the benefit of any Estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens. For the avoidance of doubt, to the extent all or any portion of the prepetition liens of any Pre-Petition Secured Party are avoided or subordinated, the Adequate Protection Liens granted herein with respect thereto shall be deemed to have no force or effect.

(b) *Adequate Protection Claims*. As further adequate protection, to the extent that the Adequate Protection Liens do not adequately protect the Diminution in Value of the Pre-Petition Secured Parties' interests in their respective collateral, the Pre-Petition Secured Parties are hereby granted, to the extent of such Diminution in Value (including on a dollar-for-dollar basis of the Cash Collateral used in accordance with the Approved Budget), an allowed superpriority administrative expense claim (the "Adequate Protection Claim," and together with the Adequate Protection Liens, the "Adequate Protection") in these Chapter 11 Cases or any Successor Cases against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code. The Adequate Protection Claims shall have priority over all other administrative expense claims, priority claims, and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order),

507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, subject only to the DIP Superpriority Claims and the Carve-Out. For the avoidance of doubt, to the extent all or any portion of the prepetition liens of any Pre-Petition Secured Party are avoided or subordinated, the Adequate Protection Claims granted herein with respect thereto shall be deemed to have no force or effect.

18. *Reservation of Individual Lender Rights in Pre-Petition Collateral.* Notwithstanding anything to the contrary in this Interim Order, each DIP Lender's interest in its respective Pre-Petition Collateral (including, in the case of Dacian, the Dacian Pre-Petition Collateral, and, in the case of National Founders, the National Founders Collateral) in which such DIP Lender or its Affiliate holds a first-priority security interest in its capacity as a Pre-Petition Lender shall remain with such DIP Lender (or its applicable affiliate), and neither the Agent nor any other DIP Lenders shall have any authority to release, dispose of, or take any action with respect to such Pre-Petition Collateral without the prior written consent of the DIP Lender (or Affiliate) holding such first-priority security interest. Nothing in this Paragraph shall limit or expand the DIP Liens, Adequate Protection Liens, or Priming Liens granted herein.

19. *Application of Payments and Proceeds.* All payments required to be made under the DIP Credit Facility and/or proceeds collected with respect to the Pre-Petition Collateral and/or the DIP Collateral shall be applied in the manner set forth in the DIP Loan Documents applicable thereto.

20. *Escrow of Disputed Multi-Lender Collateral Proceeds.* To the extent the Debtors generate proceeds from a sale or other disposition of Debtor Assets that are subject to the Liens of more than one DIP Lender (including due to such Debtor Assets constituting Existing First-Priority DIP Collateral) and the affected DIP Lenders are unable to stipulate to the amount payable

to each of them, the full amount of such proceeds shall be escrowed by the Agent until further order of this Court or stipulation among such DIP Lenders.

21. *Right to Credit Bid.* Pursuant to Section 363(k) of the Bankruptcy Code, (a) the Agent (on behalf of the DIP Lenders) and/or (b) the Pre-Petition Lenders and/or their Affiliates (each in their individual capacities) are each permitted in all respects to, as the case may be, credit bid against the assets of the Debtors' Estates, subject to a successful Challenge asserted in accordance with Paragraph 28 (Challenges) below, up to the outstanding aggregate amount of each of their respective Pre-Petition Obligations and DIP Obligations in respect of any such sale (the "Credit Bid"), the form of which, including any proposed asset purchase agreement and related sale order, is reasonably acceptable to the Pre-Petition Lenders and/or the DIP Lenders (as applicable).

22. *Carve-Out.* The DIP Liens granted to the DIP Lenders, the DIP Superpriority Claims provided to the DIP Lenders, the Adequate Protection Liens, the Adequate Protection Claims, any and all other liens or claims securing the DIP Obligations, and all other liens or claims granted by this Interim Order shall be subject and subordinate in all respects only to the right of payment, funding, and priority of the Carve-Out, to the extent provided herein:

(a) *Carve-Out.* The "Carve-Out" means the sum of: (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate, without regard to the notice set forth in clause (iv) below, and which shall not be subject to any budget (collectively, "Clerk and U.S. Trustee Fees"); (ii) in the event of a conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $100,000 without regard to the notice set

forth in clause (iv) below; (iii) to the extent allowed at any time, whether by interim or final compensation order or any other order of the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtors' Professionals") or retained by any statutory committee appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtors' Professionals, the "Professional Persons") at any time before or on the day of delivery by the Agent, acting at the direction of the DIP Lenders, of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, but solely up to and to the extent such fees and expenses are unpaid and within the amounts set forth in the Approved Budget (including any Permitted Variance therefor) (the "Pre-Trigger Carve-Out"); and (iv) Allowed Professional Fees incurred after delivery by the DIP Lender of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the amount set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap"). For purposes of the foregoing, "Carve-Out Trigger Notice" means a written notice delivered by email (or other electronic means) by the Agent, acting at the direction of the DIP Lenders, to the Debtors, Debtors' counsel, the U.S. Trustee, and lead counsel to a Creditors' Committee, if any, stating that the Post-Carve-Out Notice Cap has been invoked, which notice may be delivered only following the occurrence and during the continuation of an Event of Default.

(b) *Carve-Out Payment of Allowed Professional Fees Prior to the EOD Notice Date*. Any payment or reimbursement made prior to the occurrence of the EOD Notice Date (as defined herein) in respect of any Allowed Professional Fees shall not reduce the Carve-Out. For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve-Out shall

be senior to all liens and claims securing the DIP Obligations, any adequate protection liens, and superpriority claims, any and all other liens or claims securing the DIP Obligations or the Pre-Petition Obligations, and all other liens or claims granted by this Interim Order. Further, without limiting the foregoing, the Pre-Trigger Carve-Out amount shall be limited to amounts for each Professional Person as set forth in the Approved Budget.

(c) *No Direct Obligation to Pay Allowed Professional Fees*. None of the Agent, DIP Lenders, or Pre-Petition Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the Final Order or otherwise shall be construed to (a) obligate the DIP Lenders or the Pre-Petition Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (b) impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation of any professionals, or (c) alter the requirement of a Professional Person to file and serve fee applications or otherwise comply with the Bankruptcy Code, Bankruptcy Rules or Local Bankruptcy Rules of this Court relating to payment of fees and reimbursement of expenses of Professional Persons, or with any interim compensation order or retention order entered by this Court. In no way shall the Approved Budget, the Carve-Out, the Post-Carve Out Trigger Notice Cap, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and Cash Collateral.

(d) *Payment of Carve-Out On or After the EOD Notice Date*. Any payment or reimbursement made on or after the occurrence of the EOD Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law. Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Lenders, shall not and shall not be deemed to, reduce the DIP Obligations, and shall not, and shall not be deemed to, subordinate any of the DIP Lenders' liens and security interests in the DIP Collateral or the DIP Superpriority Claims to any junior pre- or post-petition lien, interest, or claim in favor of any other party.

23. *Events of Default.* Each of the following shall constitute an "Event of Default" under this Interim Order:

(a) the occurrence of the Maturity Date;

(b) failure by the Debtors to comply with any of the Bankruptcy Milestones set forth above;

(c) the granting of relief from the automatic stay to any creditor or party-in-interest other than the DIP Lenders or the Pre-Petition Lenders without the DIP Lenders' consent, (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtors, or (ii) to permit other actions that would have a material adverse effect on the Debtors or their Estates;

(d) any superpriority administrative expense claim or lien that is *pari passu* with or senior to the claims, charges or liens of the DIP Lenders pursuant to this Interim Order shall have arisen or be authorized or allowed;

(e) the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables, other than payments authorized by this Court;

(f) any of the DIP Loan Documents shall cease to be valid or effective or shall be contested by any of the Debtors;

(g) the Debtors shall fail to comply in any material respect with this Interim Order or the Final Order;

(h) the Debtors shall assert in any pleading that the guaranties contained in the DIP Loan Documents are not valid and binding;

(i) other than by virtue of a repayment in full of the outstanding DIP Obligations, the DIP Liens shall cease to be valid, perfected, and enforceable;

(j) the Debtors pursue the sale of any of the DIP Collateral or the Pre-Petition Collateral without the DIP Lenders' or Pre-Petition Lenders', as applicable, written consent to process and bidding procedures related thereto; and

(k) the entry of an order in any Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Obligations, in each case subject to any applicable notice and cure periods set forth in the DIP Loan Documents.

24. *Rights and Remedies Upon Event of Default/Relief from Stay.*

(a) Upon the occurrence of and during the continuance of an Event of Default that has not be cured or waived as set forth in paragraph 24(b): (i) the DIP Lenders shall no longer have any obligation to make any DIP Loans (or otherwise extend credit) under the DIP Credit Facility; (ii) all amounts outstanding under the DIP Loan Documents shall, at the option of the DIP Lenders, be accelerated and become immediately due and payable; (iii) the DIP Lenders and the Pre-Petition Lenders shall be entitled to immediately terminate the Debtors' right to use Cash Collateral; *provided*, *however*, that the Debtors shall have the right to use Cash Collateral solely to fund the Carve-Out and pay expenses critical to the administration of the Debtors' Estates in accordance with the Approved Budget, subject to any Permitted Variances; (iv) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Interim Order and the other DIP Loan Documents; and (v) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP Term Sheet.

(b) The DIP Lenders shall provide not less than seven (7) business days' advance written notice of the occurrence of any Event of Default (such period the "Remedies Notice Period"), which notice may be by electronic mail (the "EOD Notice," and the date on which the EOD Notice is delivered, the "EOD Notice Date"), to counsel to the Debtors, the Creditors' Committee, if any, and the U.S. Trustee, and file the EOD Notice on the docket for the Chapter 11 Cases. Following service of an EOD Notice, upon request of a party in interest, the Court may hold a hearing prior to the expiration of the Remedies Notice Period. If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Remedies Notice Period, the Remedies Notice Period shall be deemed automatically extended until such time as the matter can be heard by the Court. Nothing herein shall prevent or preclude the Debtors from seeking appropriate relief from the Court including, but not limited to, a determination that no Event of Default has occurred.

(c) Subject to paragraph 24(b), upon the occurrence of and during the continuance of an Event of Default and the expiration of the Remedies Notice Period, the Agent, acting at the direction of the DIP Lenders, shall be entitled to take any other action and exercise all other rights and remedies provided in this Interim Order, the DIP Loan Documents, or applicable law in relation to the financing authorized herein.

(d) Additionally, upon the occurrence and during the continuance of an Event of Default, expiration of the Remedies Notice Period, and the exercise by the Agent, acting at the direction of the DIP Lenders, of its rights and remedies under this Interim Order or the DIP Loan Documents, the Debtors shall cooperate with the DIP Lenders in the exercise of such rights and remedies and assist the DIP Lenders in effecting any sale or other disposition of the DIP Collateral required by the DIP Lenders, including any sale of DIP Collateral pursuant to Section 363 of the

Bankruptcy Code or assumption and assignment of DIP Collateral consisting of contracts and leases pursuant to Section 365 of the Bankruptcy Code, in each case, upon such terms that are acceptable to the DIP Lenders.

(e) The rights and remedies of the DIP Lenders and Pre-Petition Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders and/or Pre-Petition Lenders may have under the DIP Loan Documents or Pre-Petition Loan Documents, as applicable, or otherwise and may be exercised in whole or in part in any order. With respect to the exercise of such rights and remedies, the fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

(f) *Relief from Stay.* For the purpose of exercising rights, options and remedies set forth in this Paragraph 24 or otherwise provided for under the DIP Loan Documents, upon expiration of the Remedies Notice Period, and subject to paragraph 24(b), unless otherwise ordered by the Court, the DIP Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Loan Documents, the Pre-Petition Loan Documents, or this Interim Order.

25. [*Reserved*].

26. *Good Faith Under Section 364(e).* Based on the findings set forth herein and the record made at the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, the Agent, the DIP Lenders, and each of their respective counsel, advisors, and consultants, are each entitled to the benefit of, and are hereby granted, a finding of “good faith” under Section 364(e) of the Bankruptcy Code solely with respect to the DIP Facility and post-petition use of

Cash Collateral and Pre-Petition Collateral pursuant to this Interim Order, and, if any provision of this Interim Order is hereafter modified, amended, vacated, or stayed by a subsequent order of this or any other court, the Agent and the DIP Lenders (and their respective counsel, advisors, and consultants) are entitled to all protections afforded under Section 364(e), and any such modification, amendment, vacatur, or stay shall not affect the validity or enforceability of any advances previously made, or any lien, claim, priority, or other protection authorized or created hereunder prior to the effective date of such modification, amendment, vacatur, or stay, provided this Interim Order was not stayed pending appeal at the time such advances were made or such liens, claims, or priorities were authorized or created.

27. *Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out.* No proceeds of the DIP Credit Facility, the DIP Collateral, the Pre-Petition Collateral, the Carve-Out, or any Cash Collateral may be used by the Debtors or any other party-in-interest to (a) take any action prohibited by the Bankruptcy Code or this Interim Order; (b) use funds in any manner except as set forth in the Approved Budget; (c) directly or indirectly finance any litigation that could be adverse to the interests of the Pre-Petition Lenders, the Agent, or the DIP Lenders, or any other action that would result in an Event of Default under the DIP Credit Facility; or (d) fund any distribution under a Chapter 11 plan that does not provide for the indefeasible payment in full in cash of the DIP Obligations, unless otherwise agreed in writing by the Required Lenders; *provided*, *however*, that the DIP Collateral, or the Pre-Petition Collateral, including Cash Collateral, in the aggregate, may be used by an estate fiduciary, including a Creditors' Committee, if any, or a Chapter 7 trustee or a Chapter 11 trustee, if any, to (a) investigate any and all claims and causes of action, including those under chapter 5 of the Bankruptcy Code, in an amount to be

determined by the Debtors (in consultation with the Creditors' Committee, if appointed); and/or (b) for independent counsel for the independent manager (if appropriate in her discretion).

28. *Challenges*. Any party-in-interest with proper standing by order of the Court may file an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority, perfection, or extent of the Pre-Petition Obligations, the Pre-Petition Liens of the Pre-Petition Lenders on the Pre-Petition Collateral securing the Pre-Petition Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against the Pre-Petition Lenders on behalf of the Debtors' Estates ((x) and (y) collectively, referred to herein as "Challenges") in connection with the matters related to the Pre-Petition Loan Documents, the Pre-Petition Obligations, the Pre-Petition Liens, or the Pre-Petition Collateral. Nothing in this Interim Order vests or confers on any person, including, without limitation, any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, and a separate order of the Court conferring such standing on any Creditors' Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by any such Creditors' Committee or such other party-in-interest.

29. [*Reserved*].

30. *Additional Guarantors*. The Debtors shall be and are hereby authorized to cause any of their direct or indirect subsidiaries that files a Chapter 11 Case as a Subsequent Debtor to promptly execute and deliver to the Agent and the DIP Lenders a "Guarantor Joinder" substantially in the form and substance that is mutually agreeable to the DIP Lenders and the Debtors, after which such Subsequent Debtor shall be deemed an additional guarantor with the same force and effect as if originally named a Guarantor under the DIP Loan Documents. Without limiting the generality of the foregoing, any Subsequent Debtor who shall become an Additional

Guarantor shall be, and is hereby authorized and directed to perform all obligations of, a Guarantor under the DIP Loan Documents to which Guarantors are parties and to acknowledge and agree that it is bound as a Guarantor thereunder as if it had been an original signatory thereto.

31. *Limits on Lender Liability.* Nothing in this Interim Order or the DIP Loan Documents shall be construed to impose liability on the Agent or any DIP Lenders for claims arising from the Debtors' post-petition business operations or the administration of the Chapter 11 Cases. None of the Agent or the DIP Lenders shall, solely by reason of having made the DIP Loans or consented to the use of Cash Collateral, be deemed in control of the Debtors' operations or a "responsible person" or "owner or operator" for purposes of any environmental or similar law.

32. *Waiver of Section 506(c) Claims & 552(b) Equities; No Marshaling.* Subject to approval upon entry of a Final Order, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against any of the Pre-Petition Lenders or the DIP Lenders, their respective claims, or the DIP Collateral or Pre-Petition Collateral, as applicable, pursuant to Bankruptcy Code Section 506(c) without the prior written consent of the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lenders or the Pre-Petition Lenders). Upon entry of the Final Order, the Pre-Petition Lenders and DIP Lenders shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition Lenders and DIP Lenders with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable. In no event shall the DIP Lenders or the Pre-Petition Lenders be subject to the equitable doctrine of "marshaling" or any similar equitable doctrine with respect to the Pre-Petition Collateral or the DIP Collateral upon entry of the Final Order.

33. [*Reserved*].

34. *No Modification or Stay of this Interim Order.* Based upon the record presented to the Court by the Debtors, notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation, or reversal of this Interim Order, the DIP Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2), or (c) the dismissal or conversion of one or more of the Chapter 11 Cases, the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents as of the date any event referred to in clauses (a), (b) or (c) shall have occurred.

35. *Power to Waive Rights; Duties to Third Parties.* The Pre-Petition Lenders and the DIP Lenders shall have the right, in their respective sole discretions, to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order, the pre-petition loan agreements, or the DIP Loan Documents ("Lender Rights") with respect to each of them, as applicable, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right. Any waiver by any of them of any Lender Right shall apply solely to such party and to the Lender Right so waived and shall not be or constitute a continuing waiver, except that any waiver by the Pre-Petition Lenders or the DIP Lenders shall bind the Pre-Petition Lenders or DIP Lenders, as applicable, in accordance with the pre-petition loan documents or DIP Loan Documents. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the Pre-Petition Lenders or the DIP Lenders. For the avoidance of doubt,

such discretion with respect to the DIP Lenders shall be governed by the terms of the DIP Loan Documents.

36. *No Waiver by Failure to Seek Relief.* No delay or failure on the part of the Agent or any DIP Lenders to seek relief or exercise any right or remedy under this Interim Order or the DIP Loan Documents shall constitute a waiver of such right or remedy. No amendment, modification, suspension, or waiver of any right or remedy shall be effective unless in writing and signed by the party against whom it is sought to be enforced, and no consent required of the Agent or any DIP Lenders shall be implied from inaction or acquiescence.

37. *Indemnification.* The Agent and the DIP Lenders shall be indemnified as, and to the extent, provided in the DIP Loan Documents with respect to the financing and use of Cash Collateral authorized herein.

38. *Reservation of Rights*. The terms, conditions, and provisions of this Interim Order are in addition, and without prejudice, to the rights of the Pre-Petition Lenders or the DIP Lenders, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the pre-petition loan documents, or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral, other Pre-Petition Collateral, or the proceeds of the DIP Credit Facility (other than as permitted under this Interim Order and the DIP Term Sheet) or the granting of any interest in the DIP Collateral (other than as contemplated herein or permitted under the DIP Loan Documents), to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

39. *Modification of the Automatic Stay.* The automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Loan Documents, including, without limitation, the application of collections, authorization to make payments, granting of liens, and perfection of liens.

40. *Binding Effect.*

(a) The provisions of this Interim Order, the DIP Loan Documents, the DIP Superpriority Claims, DIP Liens, Adequate Protection Liens, Adequate Protection Claims, the DIP Obligations and any and all rights, remedies, privileges, and benefits in favor of the DIP Lenders and the Pre-Petition Secured Parties provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other Order, other than the Final Order, including, without limitation, any order that may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other Chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

(b) Subject to a successful Challenge as set forth in Paragraph 28, above, any order dismissing one or more of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Lenders' and the Pre-Petition Lenders' respective, liens on, and security interests in, the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Adequate Protection Obligations, as applicable, owed to such parties, respectively, are indefeasibly paid and satisfied in full, and (ii) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for

the purposes of enforcing the DIP Superpriority Claims, DIP Liens, Adequate Protection Liens, and Adequate Protection Claims of the Pre-Petition Lenders and DIP Lenders, as applicable.

(c) In the event this Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, this Interim Order shall remain in full force and effect, except as expressly amended or modified at such Final Hearing.

(d) This Interim Order shall be binding upon the Debtors, their Estates, all parties-in-interest in the Chapter 11 Cases, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases of any Debtors, and shall inure to the benefit of the Pre-Petition Lenders, the DIP Lenders, the Debtors, and their respective successors and assigns, subject to the rights of any party-in-interest or trustee under Paragraph 28 above.

41. *Proofs of Claim*. Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, neither the Pre-Petition Lenders nor the DIP Lenders shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases with respect to, as applicable, any of Pre-Petition Obligations, Adequate Protection Obligations, Adequate Protection Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims, or any other claims or liens granted hereunder or created by this Interim Order. The Pre-Petition Lenders and the DIP Lenders are hereby authorized and entitled, in each's respective sole and absolute discretion, but in no event are required, to file (and amend and/or supplement, as each sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of the Pre-Petition Lenders in respect of the Pre-Petition Obligations or on behalf of the DIP Lenders in respect of the applicable DIP Obligations, as applicable. Any

proof of claim so filed shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the Pre-Petition Lenders or DIP Lenders.

42. *Proceeds of Subsequent Financing*. If the Debtors, any trustee, or any other estate representative subsequently appointed in the Chapter 11 Cases shall obtain credit or incur debt other than the credit or debt provided pursuant to this Interim Order at any time prior to the repayment in full of all DIP Obligations, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders in such amount that will indefeasibly pay in full all such DIP Obligations.

43. *Waiver of Bankruptcy Rule 6003(b), 6004(a), and 6004(h).* The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

44. *Order Controls.* In the event of a conflict between (a) the terms and provisions of the DIP Loan Documents or any pre-petition loan documents, as applicable, and (b) the terms and provisions of this Interim Order, then in each case the terms and provisions of this Interim Order shall govern.

45. *Discharge Waiver.* The DIP Obligations, the DIP Superpriority Claims, and the DIP Liens shall not be discharged by entry of an order confirming a plan of reorganization, notwithstanding Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash or otherwise discharged with the consent of the DIP Lenders on or before the effective date of such plan.

46. *Survival.* The provisions of this Interim Order shall survive entry of any order confirming a plan of reorganization, converting any Chapter 11 Case to a case under Chapter 7, dismissing any Chapter 11 Case, or by which the Court abstains from hearing any Chapter 11

Case, and the DIP Liens, DIP Superpriority Claims, and other protections granted hereunder shall continue in full force until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments are terminated. The provisions of this Interim Order concerning indemnification shall survive termination of the DIP Loan Documents and repayment of the DIP Obligations.

47. *Retention of Jurisdiction.* The Court retains jurisdiction to resolve any dispute arising from or related to the interpretation or enforcement of this Interim Order and the DIP Loan Documents.

48. *Calculation of Dates.* All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

49. *No Third Party Rights.* Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

50. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for September 8, 2026, at 9:30 a.m. (prevailing Central Time) before this Court. The Debtors shall promptly serve a copy of this Interim Order to the following parties:

a. the Office of the U.S. Trustee;

b. the U.S. Attorney's Office for the Northern District of Texas;

c. counsel to the DIP Lenders;

d. counsel to the Pre-Petition Lenders;

e. the Debtors' known secured creditors;

f. those creditors holding the thirty (30) largest unsecured claims against the Debtors' Estates;

g. all governmental agencies having a regulatory or statutory interest in these cases;

h. financial institutions where the Debtors hold bank accounts;

i. parties that have requested notice pursuant to Bankruptcy Rule 2002; and

j. any other parties included on the Master Service List.

51. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel for the Debtors, Gray Reed, 1845 Woodall Rodgers Fwy, Ste 1300, Dallas, TX 75201, Attn: Jason S. Brookner (jbrookner@grayreed.com) and Amber M. Carson (acarson@grayreed.com); (b) counsel for AAV2024, ACM Delegate LLC, Advantage Capital Holdings LLC, and Haymarket Insurance Company, Foley & Lardner LLP, 2021 McKinney Ave., Suite 1600, Dallas, Texas 75201, Attn: Mark C. Moore (mmoore@foley.com) and Nora J. McGuffey (nora.mcguffey@foley.com); (c) counsel for Dacian, Haynes and Boone, LLP, 2801 N. Harwood St., Suite 2300, Dallas TX 75201, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com) and Rafael P. Saplala (rafael.saplala@haynesboone.com), and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 919 Third Avenue, New York, New York 10022, Attn: Frank Earley (FJEarley@mintz.com), Kaitlin Walsh (KRWalsh@mintz.com), and Dormie Ko (DKo@mintz.com); (d) counsel to National Founders LP, Sidley Austin, One South Dearborn, Chicago, IL 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Mark Werner (mwerner@sidley.com), 2323 Cedar Springs, Suite 2600, Dallas, TX 75201, Attn: Parker G. Embry (parker.embry@sidley.com); and (e) the Acting Assistant U.S. Trustee, Elizabeth A. Young (elizabeth.a.young@usdoj.gov); and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Texas, by no later than September [2], 2026 at [5:00 p.m.] (prevailing Central Time).

# # # END OF ORDER # # #

Submitted by:
Jason S. Brookner (TX Bar No. 24033684)
Amber M. Carson (TX Bar No. 24075610)
Blake M. Bryan (TX Bar No. 24140152)
**GRAY REED**
1845 Woodall Rodgers Fwy, Suite 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

# Exhibit 1

## Approved Budget

# 777 Partners LLC & Affiliates

## DIP Budget

**$ - Thousands**

| | August | | September | | | |
|---|---|---|---|---|---|---|
| *Period Ending ----->* | *8/21* | *8/28* | *9/4* | *9/11* | *9/18* | *Total* |
| **Beginning Cash:** | **$ 140** | **$ 602** | **$ 577** | **$ 462** | **$ 362** | **$ 140** |
| **Cash Inflows:** | | | | | | |
| DIP Loan - ACAP | 600 | - | - | - | - | 600 |
| DIP Loan - Dacian | - | - | - | - | - | - |
| DIP Loan - National Founders | - | - | - | - | - | - |
| Total DIP Inflows | **600** | **-** | **-** | **-** | **-** | **600** |
| Non-DIP Inflows | **-** | **-** | **-** | **-** | **-** | - |
| **Cash Outflows:** | | | | | | |
| **Payroll & Benefits:** | | | | | | |
| US Holdco | 100 | - | 100 | - | 100 | 300 |
| Benefits | 18 | - | - | - | 18 | 36 |
| ***Total Payroll & Benefits*** | **118** | **-** | **100** | **-** | **118** | **336** |
| **Other Expenses:** | | | | | | |
| RAMP Corporate Card | - | 25 | - | - | - | 25 |
| Rent | - | - | - | - | - | - |
| Legal | - | - | 15 | - | - | 15 |
| Other Vendors | 20 | - | - | - | 15 | 35 |
| ***Total Other Expenses*** | **20** | **25** | **15** | **-** | **15** | **75** |
| **Operating Cash Flow** | **462** | **(25)** | **(115)** | **-** | **(133)** | **189** |
| **Restructuring:** | | | | | | |
| Professional Fees & UST Quarterly Fees | - | - | - | 100 | - | 100 |
| Wind Down Expenses | - | - | - | - | - | - |
| ***Subtotal*** | **-** | **-** | **-** | **100** | **-** | **100** |
| **Cash Flow net of Restructuring** | **462** | **(25)** | **(115)** | **(100)** | **(133)** | **89** |
| **Ending Cash Balance:** | **602** | **577** | **462** | **362** | **229** | **229** |

**777 Partners LLC & Affiliates**

**DIP Budget**

**$ - Thousands**

| | August | | September | | | |
|---|---|---|---|---|---|---|
| *Period Ending ----->* | *8/21* | *8/28* | *9/4* | *9/11* | *9/18* | *Total* |
| **Legal** | | | | | | |
| Independent Director Fees & Expenses | $ - | $ - | $ 15 | $ - | $ - | $ 15 |
| Bayard PC - DE Counsel | - | - | - | - | - | - |
| **Total Legal** | **-** | **-** | **15** | **-** | **-** | **15** |
| | | | | | | |
| **Restructuring** | | | | | | |
| GlassRatner | - | - | - | - | - | - |
| Berger Singerman | - | - | - | - | - | - |
| Debtors' Counsel (SGR/Gray Reed) | - | - | - | - | - | - |
| Claims & Noticing Agent | - | - | - | 100 | - | 100 |
| Unsecured Creditors Committee | - | - | - | - | - | - |
| US Trustee Fees - Quarterly | - | - | - | - | - | - |
| **Total Restructuring** | **-** | **-** | **-** | **100** | **-** | **100** |

# Exhibit 2

## DIP Term Sheet

**FOLEY & LARDNER 8/18/2026**

Signal National LLC, *et al*[1]
Bankruptcy Case No. 26-90190 (Jointly Administered)
$8,600,000 Senior Secured Debtor in Possession Credit Facility
Summary of Principal Terms and Conditions

The following Summary of Principal Terms and Conditions (this "***Summary***") outlines the indicative economic and other terms of a proposed debtor-in-possession financing for Signal National LLC ("***Signal***"), and its affiliated debtors and debtors-in-possesstion in the Chapter 11 Cases (as defined herein) (collectively, the ***"Debtors***"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing, And (Vi) Granting Related Relief* [Docket No. 12] (the "***DIP Motion***"). References to "***DIP Credit Agreement***" shall mean the "DIP Credit Agreement" as defined in the DIP Motion.

| | |
|---|---|
| General Structure: | The Borrowers will obtain up to $8,600,000.00 in term loans, with such term loans to be funded in multiple draws during the Chapter 11 Cases as set forth herein and in accordance with the Approved Budget (as defined below) (the "***DIP Loans***").[2] |
| Borrowers: | 777 Partners LLC ("***777***"), 600 Partners LLC ("***600***"), and Signal. |
| Guarantors: | As set forth in the DIP Credit Agreement. |
| DIP Agent/Lenders: | ACM Delegate LLC will act as sole and exclusive administrative agent (in such capacity, the "***DIP Agent***") for AAV2024 LLC ("***AAV2024***"), Advantage Capital Holdings LLC ("***ACH***"), Haymarket Insurance Company ("***Haymarket***"), Dacian Master Fund LP ("***Dacian***"), and National Founders LP ("***National Founders***") as lenders under the DIP Facility (collectively, the "***DIP Lenders***"), and will perform the duties customarily associated with such role. |
| DIP Facility: | A senior secured debtor-in-possession credit facility (the "***DIP Facility***") consisting of up to $8,600,000.00 in DIP Loans, in accordance with the applicable DIP Documents. The DIP Facility shall be authorized pursuant to, among other things, Sections 364(c) and (d) of the Bankruptcy Code. |

[1] The Debtors in the chapter 11 cases jointly administered at Case No. 26-90190 (collectively, the "***Chapter 11 Cases***" are Signal , 600, 777 Asset Management LLC, 777, Daedalus I LLC, Employee Funding of America, LLC, F3EA Capital LLC, F3EA Holdings LLC, F3EA Servicing LLC, Ironman Capital LLC, Lex Capital Holdings LLC, Lumiere Acquisitions Company LLC, Lumiere Financing LLC, Phoenicia LLC, Signal AHF Medical Receivables HoldCo LLC, Signal LF Portfolio Holdco LLC, Signal MLH Medical Receivables HoldCo LLC, Signal Servicing LLC, Singer Asset Finance Company, LLC, SuttonPark Capital LLC, SuttonPark Servicing LLC, Tactical Marketing Partners LLC, Thresher Acquisition LLC.

[2] Provided, however, the DIP Lenders will match and raise any offer received by the Debtors at or prior to the agreed-upon deadline of August 18, 2026 at 12:00 p.m. (CT) from Leadenhall by $50,000.00.

<u>Financing Orders</u>: Upon the entry of an interim Bankruptcy Court order, in form and substance satisfactory to the DIP Agent, authorizing and approving the DIP Facility (the "***Interim Order***"), the Borrowers shall be entitled to borrow, subject to the terms and express conditions contained herein (including, without limitation, satisfaction (or waiver) of the conditions precedent to borrowing set forth herein), under the DIP Facility up to $600,000.00 pending the final hearing and as set forth in the DIP Budget (as defined below).

Upon the entry of a final Bankruptcy Court order, in form and substance satisfactory to the DIP Agent, authorizing and approving the DIP Facility (the "***Final Order***", together with the Interim Order, the "***Financing Orders***"), the Borrowers shall be entitled to borrow all amounts available under the DIP Facility, subject to the terms and express conditions contained herein (including, without limitation, satisfaction (or waiver) of the conditions precedent to borrowing set forth herein) and as set forth in the DIP Budget, and as may otherwise be limited by the Final Order.

The Financing Orders shall be in form and substance acceptable to the DIP Agent, provided that such Financing Orders shall contain the following terms and conditions:

1. The Financing Orders shall not roll up any amounts of the Pre-Petition Advances or Pre-Petition Indebtedness.

2. The Financing Orders shall contain a Carve-Out, consistent with the terms set forth in the DIP Motion.

3. The Financing Orders shall not require any stipulations by the Debtors related to the scope, perfection or validity of any liens and security interests granted by the Debtors prior to the Petition Date, all of which shall remain subject to challenge by interested parties.

4. The Debtors shall not grant any releases to any parties under the Financing Orders, including, for the avoidance of doubt, any prepetition secured parties.

5. The Challenge Period, as defined in the DIP Motion, shall be eliminated in its entirety.

6. The Financing Orders shall provide for customary findings for DIP lenders, as set forth in the DIP Motion and proposed Interim DIP Order, including good faith findings pursuant to Section

364(e), solely with respect to the DIP Facility and the post-petition use of Pre-Petition Collateral.

Maturity Date: 195 days after the Petition Date and otherwise provided in the DIP Credit Agreement.

Closing Date: The date of the entry of the Interim Order and satisfaction of the Conditions Precedent to Initial Borrowing (the "***Closing Date***").

Purpose: Subject to the terms and express conditions herein (including, without limitation, satisfaction of the express conditions precedent to borrowing set forth herein), the proceeds of the DIP Loans shall be available on or after the Closing Date and shall be used in connection with the administration of the Debtors' Chapter 11 Cases by the Debtors in accordance in all material respects with the applicable DIP Budget (defined below).

DIP Budget: The DIP Agent shall have received a 13-week cash flow forecast detailing cash receipts and cash disbursements on a weekly basis for such period, or such other forecast and reporting as agreed by the Debtors and the DIP Agent, in form and substance acceptable to the DIP Agent (together with any updates in accordance with the terms hereof, the "***DIP Budget***"). The DIP Budget is subject to update and modification on terms to be mutually agreed between the Debtors and the DIP Agent, which shall include the right of the Borrowers to submit updates from time to time subject to the approval of the DIP Agent.

The Borrowers shall be permitted to make borrowings consistent in all material respects with the DIP Budget, subject to the other terms set forth herein.

Permitted Variances The Debtors shall comply with the DIP Budget, subject to the following "***Permitted Variances***"):

1. The Debtors shall not permit payments for any Measuring Period (as defined below) to exceed one hundred twenty percent (120%) of the respective amounts, measured on an aggregate basis, as set forth for such Measuring Period; *provided* that the Debtors shall not permit expenditures for estate professional fees to exceed one hundred ten percent (110%) of the amount allocated for such expenditures in the Approved Budget for such Measuring Period (but notwithstanding anything to the contrary set forth in this Interim Order or the DIP Credit Agreement, the Debtors may incur estate professional fees and expenses that exceed the amount in the Approved Budget and any favorable variance from a Measuring Period may be used to pay professional fees and expenses incurred in a different Measuring Period).

| | |
|---|---|
| | 2. The Permitted Variances shall be measured and tested every other week based on a rolling four-week period (the "***Measuring Period***"); *provided*, *however*, that the first Measuring Period shall be for the period from the Petition Date to the date that is approximately two weeks thereafter. |
| Cash Collateral; | Borrowings under the DIP Facility shall constitute "cash collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code) of the DIP Lenders (the "***DIP Cash Collateral***"). The DIP Cash Collateral shall be held in a segregated account acceptable to the DIP Agent. The DIP Cash Collateral shall not be commingled with cash collateral of any prepetition secured party. |
| SuttonPark: | Consistent with the DIP Credit Agreement, cash receipts and disbursements of SuttonPark Capital LLC, SuttonPark Servicing LLC, and its Subsidiaries, which are not otherwise captured in the Budget may be used to fund operations in the ordinary course of their businesses |
| Interest Rates and Fees: | Interest Rate: 0.45% per annum;<br><br>Default Interest Rate: Interest Rate (0.45% per annum) + 2.0% |
| Fees: | None. For the avoidance of doubt, the "Upfront Fee" referred to in Section 2.6(d) of the DIP Credit Agreement were never collected and will be removed from the DIP Credit Agreement. Furthermore, the DIP Lenders agree to waive the other fees contemplated in Sections 2.6(e) and 2.6(f) of the DIP Credit Agreement. |
| Priority/Security: | Any and all obligations arising under or in connection with the DIP Facility (which shall exclude, for the avoidance of doubt, fees, costs and expenses of the DIP Agent and the DIP Lenders (including fees, costs and expenses of DIP Agent and DIP Lender counsel) (collectively, the "***DIP Obligations***"), in each case, shall, subject only to the Carve Out, at all times:<br><br>(i) pursuant to Bankruptcy Code Section 364(c)(1), be entitled to joint and several superpriority administrative expense claim status in the Chapter 11 Cases, and except as otherwise provided herein shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c) (and subject to the entry of the Final DIP Order, all rights to charge the DIP Collateral under section 506(c) shall be waived), 507(a), 507(b), 546(c), 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise and be payable from all assets and property of the Loan Parties, subject only to the Carve Out (the "***DIP Superpriority Claims***"); and |

(ii) pursuant to Bankruptcy Code Sections 364(c)(2) and (c)(3), be secured by automatically perfected liens and security interests (the "***DIP Liens***") in the following priorities:

1. First-priority, fully perfected, continuing DIP Liens upon all of the Debtors' right, title and interest in, to, and under all DIP Collateral that is not encumbered by a validly perfected, enforceable, and non-avoidable security interest or lien as of the Petition Date or otherwise rendered unencumbered thereafter by the Bankruptcy Court or another court of competent jurisdiction (collectively, the "***Unencumbered Property***"), and, subject to entry of the Final Order, to any proceeds or property recovered in connection with the pursuit of claims or causes of action, including those arising under chapter 5 of the Bankruptcy Code, if any (the "<u>Chapter 5 DIP Collateral</u>"); *provided*, *however*, that the liens securing the Chapter 5 DIP Collateral shall not exceed the DIP Obligations.[3]

2. A junior-priority, fully-perfected, continuing DIP Lien on all property of the Debtors that are subject to valid, perfected and non-avoidable security interest or lien (other than the liens granted hereunder) at any time.

in each case, including any proceeds and products thereof in whatever form received, subject to the Carve-Out (collectively, the "***DIP Collateral***").

Notwithstanding anything to the contrary herein or in the DIP Loan Documents, "Unencumbered Property" shall not include the proceeds of any claims, including those arising under chapter 5 of the Bankruptcy Code, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, that the Debtors, their estates, affiliates, or subsidiaries may have against the Agent or the respective DIP Lenders or Pre-Petition Lenders (the "***DIP Causes of Action***"). For the avoidance of the doubt, each DIP Lender will receive DIP Liens on DIP Causes of Action except those that against such respective DIP Lender.

---

[3] This language is consistent with the DIP Lenders proposed Interim DIP Order, at ¶ 10(a), while also clarifying that the liens securing the Chapter 5 DIP Collateral shall not exceed the DIP Obligations.

The DIP Lenders agree that all priming liens will be subject to entry of a final order.

All the above-described pledges, security interests and mortgages shall be (a) created on terms, and pursuant to documentation reasonably satisfactory to the DIP Agent and the Borrowers and (b) perfected upon entry of the applicable Financing Order, without the need to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar documents or instruments; provided that the DIP Agent shall be permitted to make any or all such filings.

Documentation Principles:

Funding pursuant to this Summary is subject to finalization of definitive documentation with respect to the DIP Facility (the "***Financing Documentation***"), which shall be in form and substance acceptable to the DIP Agent, consistent with similar debtor in possession secured financing facilities.

All orders in the Chapter 11 Cases approving or authorizing the DIP Facility or relating to cash management and all motions relating there shall be in form and substance reasonably acceptable to the DIP Agent.

Carve Out:

Substantially similar to the form proposed in the DIP Motion, in form and substance acceptable to the DIP Agent. The "Carve-Out" for a Chapter 7 Trustee shall be in an amount not to exceed $100,000. The Post-Trigger Carve-Out shall be in the amount not to exceed $250,000.

The DIP Lenders will support budget item(s) in the Approved Budget (a) to be used by the Debtor or committee (or other estate fiduciary) to pursue an independent investigation of *all* claims and causes of action, including those under chapter 5 of the Bankruptcy Code, in an amount to be determined by the Debtor (in consultation with a committee); and/or (b) for independent counsel for the independent director (if appropriate in her discretion).

Adequate Protection:

Creditors with valid, perfected, non-avoidable liens and security interests in the Debtors' property shall be entitled to adequate protection in an amount equal to the diminution of value in their respective collateral, consisting of the following:

1. Adequate protection replacement liens on their respective collateral, senior in priority to the relevant DIP Liens.

2. Adequate protection priority administrative expense claims under section 507(b) of the Bankruptcy Code, which shall have priority in payment over any and all administrative expense claims except for the DIP Superpriority Claims.

Milestones: The Loan Parties shall achieve the following milestones (the "***Milestones***") by the dates set forth below (or such later date as may be agreed to by the DIP Agent and the Required Lenders (defined in a manner consistent with such defined term in the Prepetition Credit Agreement)):[4]

1. On or before August 20, 2026, the Court shall have entered an Interim Financing Order, in form and substance acceptable to the DIP Lenders.
2. Within thirty (30) days following the Petition Date, entry of an order directing transfer of the SD Fla Case to this Court for consolidation with the Chapter 11 Cases, or otherwise resolving the pendency of the SD Fla Case on terms reasonably satisfactory to the DIP Lenders.
3. On or before the date that is thirty-five (35) days following entry of the Interim DIP Order, the Debtors shall have obtained entry of the Final Order in form and substance acceptable to the DIP Lenders in all respects.
4. On or before September 23, 2026, the Chapter 11 Cases for the Subsequent Debtors shall be filed in the Bankruptcy Court.
5. On or before November 6, 2026, the Debtors shall have filed in the Court the Plan and associated Disclosure Statement (the "***Disclosure Statement***") along with a motion seeking, among other things, approval of the Disclosure Statement and approval of solicitation procedures and to set a hearing for confirmation of the Chapter 11 plan (the "***Plan***"), all in a form and substance acceptable to the DIP Lenders.
6. On or before January 18, 2027, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the DIP Agent, confirming the Plan in form and substance acceptable to the DIP Lenders.
7. On or before the date that is fourteen (14) days after the Confirmation Order, the Plan shall have become effective.

Credit Bid: The DIP Agent and Lenders shall have the right to credit bid all of their respective claims, respectively, in any sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, consistent with the terms proposed in the Interim DIP Order.

[4] All milestones will be subject to Rule 9006 of the Federal Rules of Bankruptcy Procedure.

| | |
|---|---|
| Governance | The Debtors' management, governance and decision-making shall at all times continue to be exercised by independent managers, officers and similar fiduciaries acceptable to the DIP Lenders. |
| Governing Law and Forum: | New York. |
| Counsel to the DIP Agent: | Foley & Lardner LLP<br><br>Croke Fairchild Duarte & Beres LLC |