**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 8, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| SIGNAL NATIONAL LLC., *et al.*,[1] | § | Case No. 26-90190 (ELM) |
| Debtors. | § | (Jointly Administered) |
| | § | **Re: Docket No. 7** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS**
**TO CONTINUE TO OPERATE THEIR CASH MANAGEMENT**
**SYSTEM AND HONOR CERTAIN PREPETITION OBLIGATIONS**
**RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the Debtors to

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

continue to operate their Cash Management System; and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and the record of the hearing on such motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System and Bank Accounts as described in the Motion, including any intercompany transactions described therein, in the ordinary course of business and consistent with the Debtors' historical practice, as further set forth herein; (b) honor their prepetition obligations related thereto, including the Bank Fees; and (c) pay prepetition amounts owed on and continue to utilize the Corporate Credit Card consistent with historical practice. For the avoidance of doubt, nothing in this Order authorizes the Debtors to perform any transfers to their non-Debtor affiliates or non-Debtor subsidiaries.

3. The Debtors are authorized, but not directed, to: (a) designate, maintain, close, and continue to use their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on Exhibit A to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (c) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; (d) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts; and (e) open new debtor in possession bank accounts as needed at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or banks that are willing to immediately execute one; *provided*, *however*, that (x) the Debtors shall give notice to the U.S. Trustee, any statutory committees appointed in these chapter 11 cases, and counsel to the DIP Agent, ACAP, AAV2024, and Haymarket, counsel to Dacian, counsel to National Founders, and counsel to the official committee of unsecured creditors appointed in these cases (the "Committee") prior to opening or closing a bank account; and (y) during the DIP Commitment Period (as such term is defined in the DIP Credit Agreement), (i) such debtor in possession bank accounts shall only be opened with the consent of the agent under the DIP Credit Agreement (the "Agent") and counsel to the Committee, and (ii) the Debtors shall promptly enter into account control agreements, in form and substance reasonably acceptable to the Agent, with the Agent for any new debtor in possession accounts opened during the DIP Commitment Period.

4. Within thirty days of the entry of this Final Order, the Debtors will make reasonable efforts to provide the Committee's advisors with a matrix of net intercompany balances between and among all Debtor entities and non-Debtor affiliates as of August 9, 2026.

5. The Debtors shall maintain and provide to the U.S. Trustee and the Committee and its advisors a monthly schedule of all postpetition intercompany (i) cash payments; (ii) reductions or increases in accruals; (iii) offsets and setoffs; and (iv) other transactions (together, "Intercompany Transactions") that occurred during the preceding month between all Debtor entities so that such Intercompany Transactions may be readily ascertained, traced and recorded properly on applicable intercompany accounts; *provided, however*, that the Debtors shall only be required to provide such schedule upon completion of all terms and conditions set forth in paragraph 4 of this Order. For the avoidance of doubt, such schedule shall include, with respect to each Intercompany Transaction: (i) the name of the Debtor transferor; (ii) the name of the transferee; (iii) the amount of the Intercompany Transaction; and (iv) the purpose of the Intercompany Transaction. The Debtors shall provide a copy of the forgoing schedule on a monthly basis, at the same time the Debtors file their monthly operating reports, *provided, however*, that the first such schedule provided shall include all Intercompany Transactions, including offsetting transfers, conducted postpetition through the filing of the first monthly operating reports. The Debtors shall consult with the Committee prior to effectuating Intercompany Transactions greater than $250,000 between a Debtor and another Debtor, unless such transfer is approved by Court Order.

6. The Debtors are authorized, but not directed, to continue using, in their present form, all correspondence, checks, and business forms (including letterhead, correspondent forms, and invoices), and other documents related to the Bank Accounts existing immediately before the Petition Date and thereafter, without reference to the Debtors' status as debtors in possession; *provided, however,* that the Debtors shall reference their status as debtors in possession on any new checks after current check stock is exhausted.

7. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without disruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

8. To the extent any of the Debtors' Bank Accounts are not in compliance with 11 U.S.C. § 345(b) or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until 45 days after entry of this Order (or such additional time to which the U.S. Trustee may agree), to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; provided that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). The Debtors may obtain a further extension of the period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

9. Subject to the terms hereof, the Debtors (or a Debtors' agent) are authorized to open any new Bank Accounts or close any existing Bank Accounts and enter into any ancillary agreements including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided*, *however*, that opening such new Bank Accounts is subject to the conditions in paragraph 3 of this Order.

10. The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

11. The Debtors are authorized to promptly place stop payments on any unauthorized prepetition checks or ACH payments that should not be honored by a Cash Management Bank. The Cash Management Banks that are provided with notice of this Order shall not honor or pay any bank payments drawn on any listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

12. The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Debtors' accounts; *provided*, *however*, that no checks issued against the Debtors prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by order of this Court and directed by the Debtors. The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, without further order of this Court, for all checks drawn on the Debtors' accounts which are cashed at the Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date.

13. Notwithstanding the foregoing, the Debtors shall not record any Intercompany Transactions as capital contributions without either consent of the Committee or further order of the Court.

14. The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts (including any fees and

costs associated with the same) resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

15. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, the estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

16. Any bank or financial institution, including the Cash Management Banks, is further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

17. Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship

between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, the termination and fee provisions, shall remain in full force and effect.

18. Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtors that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition Date, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

20. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid in connection with the relief granted herein.

21. Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to, and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of approving the DIP Motion filed substantially contemporaneously with the Motion (collectively, the "DIP Orders") (and any permitted variances thereto), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing

herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders or Approved Budget. In the event of any inconsistency between the terms of this Order and the terms of the DIP Orders, the terms of the DIP Orders shall govern.

22. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

23. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(a).

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

26. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner (TX Bar No. 24033684)
Amber M. Carson (TX Bar No. 24075610)
Blake M. Bryan (TX Bar No. 24140152)
**GRAY REED**
1845 Woodall Rodgers Fwy, Suite 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*