Thomas A. McKay (*Pro Hac Pending)*
**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494
Email: tmckay@maglaw.com

***Attorneys for Steven Pasko***

Jeff Prostok (State Bar No. 16352500)
Suzanne K. Rosen (State Bar No. 00798518)
Mary Taylor Stanberry (State Bar No. 24143781)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: (817) 877-4223
Email: jeff.prostok@vkhh.com
Email: suki.rosen@vkhh.com
Email: mary.stanberry@vkhh.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>SIGNAL NATIONAL LLC, *et al.*,[1]<br><br>Debtors, | § | Chapter 11<br><br>Case No. 26-90190 (ELM)<br><br>Jointly Administered |
| STEVEN W. PASKO,<br><br>Plaintiff,<br><br>v.<br><br>LEADENHALL CAPITAL PARTNERS, LLP, AND LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Defendants. | § | <br><br><br><br>Adv. Proc. No. 26-________________ |

**ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(A) DECLARING THAT THE AUTOMATIC STAY PROHIBITS THE**
**LEADENHALL ACTION AGAINST STEVEN W. PASKO, AND/OR**
**(B) PRELIMINARILY ENJOINING SUCH ACTION**

[1] A complete list of each of the debtors in these chapter 11 cases (the "**Debtors**") and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

Steven Pasko ("**Mr. Pasko**"), a creditor and former manager and officer of certain Debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and as plaintiff in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), hereby files this Original Complaint against Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, "**Leadenhall**"). In support of this Complaint, Mr. Pasko respectfully states as follows:

## INTRODUCTION

1. Mr. Pasko has commenced this adversary proceeding pursuant to Bankruptcy Rules 7001(g), 7001(i), and 7065 and sections 105(a) and 362(a) of the Bankruptcy Code seeking declaratory and injunctive relief. Mr. Pasko commenced this adversary proceeding not to deny Leadenhall any potential for recovery, but to pause Leadenhall's claims against him for the short three-month period under the DIP Financing Order[2] for the Debtors to file, confirm, and take a chapter 11 plan effective. The relief requested in this Complaint and the associated motion is necessary and appropriate because the Leadenhall Action (defined below) both asserts general claims that belong to the estates and generates claims against the estates through certain Debtors' indemnification obligations to Mr. Pasko. The Debtors have acknowledged that "at least some of the claims asserted by Leadenhall in the [Leadenhall Action] are likely property of the Debtors' bankruptcy estates …" and that "estate causes of action may be inadvertently harmed through the discovery process" in the Leadenhall Action, but they have not sought to enforce the stay.[3]

---

[2] *See* ECF 364 at ¶ 8(b).

[3] *See Debtors' Objection to Advantage Capital Holdings, LLC's Motion for Relief from Automatic Stay to Issue Written Discovery in the SDNY Action* (the "**ACAP Objection**") [ECF 429 at p. 2]. Despite the acknowledgement in the ACAP Objection and the statements made regarding Leadenhall's pursuit of estate claims at the November 4, 2026 hearing (see Transcript at pp. 18:17-19:3 and 53:4-5), neither the Debtors nor the Official Committee of Unsecured Creditors ("**Committee**") have sought to enforce the automatic stay against Leadenhall.

2. By this adversary proceeding, Mr. Pasko seeks entry of an order declaring that sections 362(a)(1) and (a)(3) of the Bankruptcy Code prohibit the continued prosecution of the claims in Leadenhall's complaint (the "**Leadenhall Complaint**")[4] filed against him in a suit (the "**Leadenhall Action**")[5] pending in the Southern District of New York. Alternatively, he requests a preliminary injunction under section 105(a) through the earlier of (i) the effective date of a confirmed chapter 11 plan, and (ii) February 5, 2027, without prejudice to a request to extend. In the further alternative, Mr. Pasko requests an order staying discovery in the Leadenhall Action directed to estate matters, including intercompany transfers, the alleged double-pledging of collateral, and the alter ego factors pleaded in the Leadenhall Complaint, because that discovery necessarily concerns estate claims and the Debtors' books and records.

3. The relief requested in this adversary proceeding is necessary and appropriate. The continued prosecution of Leadenhall's claims against Mr. Pasko violates section 362(a)(3) because its alter ego and unjust enrichment claims derive from a generalized harm to the Debtors and therefore belong to the Debtors. Leadenhall's RICO, fraud, and conspiracy claims also appear to assert both injuries to the Debtors (e.g., alleged lack of appropriate internal controls, double-pledged collateral, and use of the Debtors' borrowed funds "to fund other business ventures and pay other debt obligations and keep their enterprise afloat"[6]) and injuries to Leadenhall. However, the claims arise from the same facts, same time period, same injuries, and same evidence. Consequently, Leadenhall's pursuit of these claims violates the stay because it seeks to recover on generalized claims that belong to the Debtors' estates. Alternatively, to the extent such claims

---

[4] The operative Amended Complaint is ECF 187 in the Leadenhall Action, a copy of which is attached hereto as **Exhibit A**.

[5] *See Leadenhall Capital Partners et ano. v. Wander, et al.*, No. 24-cv-03453-JGC-BCM (S.D.N.Y.).

[6] *See* Leadenhall Complaint, ¶¶ 367, 375, 387.

assert a direct harm to Leadenhall, there is no practicable way to separate discovery on Leadenhall's claims against Mr. Pasko from its claims against the Debtors, such that discovery as to those matters should be stayed.

4. Extension of the stay is also warranted under the Fifth Circuit's "unusual circumstances" doctrine because the Debtors' indemnification obligations and the overlap between the claims make the Debtors the real party defendant. Further, continued prosecution of the Leadenhall Action against Mr. Pasko could potentially deplete the proceeds or available limits of the Debtors' D&O insurance before the Debtors have had a chance to evaluate, pursue and/or settle the estates' claims against Mr. Pasko.[7] The proceeds of those insurance policies may be critical to the compensation of the Debtors' creditors and should not be depleted in proceedings pending in another court for the benefit of a single creditor.

5. Moreover, findings of fact, conclusions of law, and a judgment against Mr. Pasko in litigation in which the Debtors are not participating could result in res judicata, collateral estoppel, or other results that would be prejudicial to the Debtors in later suits to which the Debtors are parties. Even if the Debtors did not actively participate as parties in the Leadenhall Action, given the common nucleus of operative facts and inextricably intertwined nature of the allegations against the Debtors and Mr. Pasko, the Debtors, as the repository of information likely relevant to the disputes, would inevitably be forced to participate in discovery.

6. Finally, because Leadenhall's claims are, in essence, claims against the Debtors that would be liquidated in another forum, their continued prosecution is also barred by section 362(a)(1).

---

[7] Mr. Pasko does not concede that any claims owned by the Debtors' estates have merit; instead, the question presented is which party holds them.

7. Realistically, without the requested relief, the Debtors would likely be forced to participate in the Leadenhall Action to protect their interests and minimize their potential exposure, despite the existence of the automatic stay. A stay and injunction with respect to Leadenhall's claims against Mr. Pasko in the Leadenhall Action is therefore necessary to give proper effect to the automatic stay of section 362 of the Bankruptcy Code and avoid irreparable harm to the Debtors' reorganization efforts.

8. Mr. Pasko seeks no relief for any other defendant, nothing in the requested relief adjudicates the merits of any claim, and Mr. Pasko reserves all rights, including to seek damages under section 362(k) and sanctions for any willful violation of the automatic stay.

## JURISDICTION AND VENUE

9. The United States Bankruptcy Court for the Northern District of Texas (this "**Court**") has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

10. Venue is proper under 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

11. Mr. Pasko consents to the entry of a final order under Bankruptcy Rule 7008 with respect to this Motion, and requests that any security under Federal Rule of Civil Procedure 65(c), as incorporated by Bankruptcy Rule 7065, be waived or set at a nominal amount.

12. The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rules 7001(g), 7001(i), and 7065.

## PARTIES

13. The plaintiff, Steven W. Pasko, is a resident of the State of Florida.

14. The defendant, Leadenhall Capital Partners LLP, is a limited liability partnership under the laws of England, which maintains its principal place of business in London at Level 15,

70 Mark Lane, London, England EC3R 7NQ, and may be served with process pursuant to the requirements of the Hague Convention.

15. The defendant, Leadenhall Life Insurance Linked Investments Fund PLC, is a public limited company under the laws of Ireland, which maintains its principal place of business at 70 Sir Johnrogerson's Quay, Dublin 2, Dublin, Ireland DO2 R296, and may be served with process pursuant to the requirements of the Hague Convention.

## BACKGROUND

### A. General Background

16. Debtors 777 Partners, LLC ("**777 Partners**") and 600 Partners, LLC ("**600 Partners**" and, together with 777 Partners, the "**Company**") are Delaware private investment firms that, through Debtor and non-Debtor subsidiaries, managed investments across several industries. Mr. Pasko co-founded 777 Partners with Joshua Wander, and both served as managers and officers until resigning in May 2024 amid the creditor, liquidity, and governance issues that led to these cases.[8]

17. Those issues arose primarily in the Company's structured-finance and private credit business lines, which originated, financed, and serviced structured settlement, lottery, medical, and insurance commission receivables financed through credit facilities secured by the receivables.[9]

18. One such facility was the May 7, 2021 credit facility between Company subsidiaries, as borrowers, and Leadenhall Capital Partners LLP, as administrative agent, and Leadenhall Life Insurance Linked Investments Fund PLC, as collateral agent (the "**Leadenhall Facility**"), whose obligations were guaranteed by 777 Partners and 600 Partners under a May 7,

[8] *Declaration of Mark Shapiro, Chief Operating Officer, in Support of Chapter 11 Petitions and First Day Motions*, ECF 14 ("**Shapiro Decl.**") ¶¶ 11, 16-17, 19, 53-54, 56.

[9] *Id.* ¶ 20.

2021 Guaranty Agreement.[10]

19. In 2022, issues emerged concerning the collateral securing the Leadenhall Facility and other Company facilities; Leadenhall alleges that the Company misrepresented the eligibility of the borrowing-base receivables, including because they were "double-pledged" to Leadenhall and other lenders.[11]

20. On May 3, 2024, Leadenhall sued 777 Partners, 600 Partners, several affiliates, Mr. Wander, Mr. Pasko, Advantage Capital Holdings LLC and related entities ("**ACAP**"), and Kenneth King (together, "**Defendants**") in the Southern District of New York, seeking approximately $609.5 million from the Defendants.[12]

**B. The Leadenhall Action**

21. The Leadenhall Complaint asserts twelve counts, all naming Mr. Pasko: breach of contract (Counts I–IV); civil RICO and RICO conspiracy under 18 U.S.C. § 1962(c)–(d) (Counts V–VI); fraudulent misrepresentation (Count VII); civil conspiracy to commit fraud (Count VIII); aiding and abetting fraud (Count IX); unjust enrichment (Count X); and actual and constructive fraudulent transfer under N.Y. Debtor and Creditor Law §§ 273–274 (Counts XI–XII).[13] On September 21, 2026, the court dismissed Counts XI and XII as to Mr. Pasko and Mr. Wander only.[14]

22. The contract claims arise under the Leadenhall Facility documents: the May 7, 2021 Loan and Security Agreement ("**LSA**"), Sale Agreements, Servicing Agreements, Pledge

---

[10] *Id.* ¶ 41.

[11] *Id.* ¶¶ 43, 50.

[12] *Id.* ¶¶ 43, 60; *see* **Ex. A**, Leadenhall Complaint.

[13] *See* **Ex. A**, Leadenhall Complaint ¶¶ 313–416.

[14] Leadenhall Action, ECF 605 at 3.

Agreements, and the Guaranty Agreement.[15] Leadenhall alleges that four Borrowers[16] borrowed under the LSA, three Sellers[17] sold them receivables, three Servicers[18] serviced the receivables, and 777 Partners and 600 Partners guaranteed the debt; that 777 Partners and 600 Partners own the Sellers and Servicers, which own the Borrowers; and that Mr. Pasko and Mr. Wander own 777 Partners and Mr. Pasko alone owns 600 Partners.[19] Mr. Pasko was not a party to any of the Leadenhall Facility agreements.[20]

23. Counts I-IV allege:

- **Count I – Breach of the LSA:** Leadenhall alleges that the SuttonPark and Dorchester Borrowers breached the LSA by double-pledging Leadenhall's collateral and by failing to repay the roughly $600 million they owed Leadenhall upon that default.[21]

- **Count II – Breach of the Sale Agreement:** Leadenhall alleges that the Sellers breached the Sale Agreements either by (i) transferring double-pledged receivables to the Borrowers, or (ii) failing to indemnify Leadenhall for the Borrowers' breaches alleged in Count I, as required by the indemnity provisions

[15] **Ex. A,** Leadenhall Complaint ¶ 49.

[16] As alleged, the Borrowers were SPLCSS III LLC (the "**SuttonPark Borrower**"), Dorchester Receivables II LLC (the "**Dorchester Borrower**"), Signal SML 4 LLC (the "**Signal Borrower**"), and Insurety Agency Services LLC (the "**Insurety Borrower**"). [*Id.* ¶¶ 34-36.] According to the Leadenhall Complaint, both the SuttonPark and Dorchester Borrowers are single-member Delaware LLCs with SuttonPark Capital LLC ("**SuttonPark Capital**")—another Delaware LLC and a Debtor [ECF 1 at 5]—as their sole members. [**Ex. A,** Leadenhall Complaint ¶¶ 33-35.] Leadenhall alleges that the Signal Borrower is also a single-member Delaware LLC with one member, Signal Medical Receivables LLC ("**Signal Medical**")—another Delaware LLC and a Debtor. [*Id.* ¶ 35; ECF 223 at 10.] Leadenhall further alleges that the Insurety Borrower is a single-member Florida LLC with Insurety Capital LLC ("**Insurety Capital**")—a Delaware LLC—as its sole member. [*Id.* ¶ 36.]

[17] Leadenhall identifies the Sellers as SuttonPark Capital, Signal Medical, and Insurety Capital. [*Id.*]

[18] According to the Leadenhall Complaint, the Servicers were SuttonPark Servicing LLC (the "**SuttonPark Servicer**"), Signal Servicing LLC (the "**Signal Servicer**"), and Insurety Servicing LLC (the "**Insurety Servicer**"). [*Id.* ¶¶ 33, 35-36.] All three Servicers are alleged to be Delaware LLCs, and the SuttonPark Servicer and Signal Servicer are both Debtors. [*Id.*; ECF 1 at 5.] Leadenhall alleges that the SuttonPark Servicer's sole member is SuttonPark Capital [*id.* ¶ 33], and that the Signal Servicer's sole member is Signal Financial Holdings LLC ("**Signal Financial**") [*id.* ¶ 35], a Delaware LLC and a Debtor [*In re Signal Financial Holdings LLC*, No. 26-90217, ECF 1 at 19 (Bankr. N.D. Tex.)]. Leadenhall alleges that the Insurety Servicer's sole member is Insurety Capital. [**Ex. A**, Leadenhall Complaint ¶ 36.]

[19] *Id.* ¶¶ 28-30, 49(d)-(g).

[20] *See id*¶.

[21] *Id.* ¶ 317-19.

of the Sale Agreements.[22]

- **Count III – Breach of the Servicing Agreement:** Leadenhall alleges that the Servicers breached the Servicing Agreements by delivering false reports certifying that the collateral was not double-pledged,[23] and breached the LSA by failing to indemnify Leadenhall for those false reports.[24]

- **Count IV – Breach of the Guaranty Agreement:** Leadenhall alleges that 777 Partners and 600 Partners guaranteed the Borrowers' obligations under the LSA and, because the Borrowers breached the LSA as alleged in Count I, 777 and 600 Partners are liable.[25]

24. Counts I-IV each seek to extend liability to Mr. Pasko on an alter ego theory. Specifically, Counts I-III each seek to pierce the veil of the breaching entities to reach their members, then to pierce the veil of those members to reach 777 Partners and 600 Partners, and then to pierce the veil of 777 Partners and 600 Partners to reach Mr. Pasko.[26] Count IV likewise seeks to pierce the veil of 777 Partners and 600 Partners to reach Mr. Pasko.[27] Thus, all four Counts seek to pierce the veil of at least two Debtors (777 Partners and 600 Partners). Further, Counts I-II each seek to pierce the veils of Debtors SuttonPark Capital and Signal Medical and, in addition to SuttonPark Capital, Count III also seeks to pierce the veils of the SuttonPark Servicer, Signal Servicer, and Signal Financial (each of which is a Debtor)—all on the way to reaching 777 Partners and 600 Partners and, eventually, Mr. Pasko.[28]

### C. The Bankruptcy Proceedings and Subsequent Developments in the Leadenhall Action

25. On July 16, 2026, three creditors filed an involuntary chapter 7 petition against 777

[22] *Id.* ¶ 328-30.

[23] *Id.* ¶ 339-40.

[24] *Id.* ¶¶ 342-43.

[25] *Id.* ¶¶ 349-52.

[26] *Id.* ¶¶ 322, 332, 345.

[27] *Id.* ¶ 354.

[28] *See supra* ¶ 18 & nn. 13–15 (identifying the Debtor Borrowers, Sellers, and Servicers).

Partners in the Southern District of Florida, which was later transferred to this Court.[29]

26. 777 Partners filed a Suggestion of Bankruptcy in the Leadenhall Action and moved on an emergency basis to stay the action as to its non-debtor entity co-defendants, arguing that litigation against the Borrowers whose debts it guaranteed posed an immediate threat to its estate.[30]

27. On August 9, 2026, 777 Partners, 600 Partners, SuttonPark Capital, and the SuttonPark Servicer[31] filed chapter 11 petitions in this Court.[32]

28. On August 13, 2026, the district court entered a stipulation between Leadenhall and 777 Partners staying the Leadenhall Action as to all Debtor and non-debtor entity defendants—leaving only Mr. Pasko, Mr. Wander, ACAP, and Mr. King.[33]

29. On September 10, 2026, Signal Medical, Signal Financial, and other affiliates filed chapter 11 petitions in this Court.[34]

30. On August 17, 2026, A-CAP moved for a discretionary stay—which Mr. Pasko did not join because discovery was then stayed as to him pending his motion to dismiss—and the court denied ACAP's motion on September 22, 2026 after lifting the stay as to Mr. Pasko a day earlier.[35]

31. On November 2, 2026, Mr. Pasko filed proofs of claim against each of the Debtors. His claim against 777 Partners (Claim No. 10206) asserts not less than $48.3 million, including a $35.5 million loan, $12.5 million in deferred compensation, $340,054.28 under his consulting agreement with the Debtors, and indemnification under the *Fifth Amended and Restated Limited*

---

[29]*In re 777 Partners LLC*, No. 26-19312-PDR (Bankr. S.D. Fla. July 16, 2026); *id.* at ECF 52.

[30]Leadenhall Action ECF 575, 577; *id.* ECF 578 at 6-7.

[31] Though not named as a Defendant in the Leadenhall Action, the Signal Servicer also filed for chapter 11 on August 9, 2026. ECF 1 at 5.

[32] ECF 1 at 5; Leadenhall Action ECF 587.

[33]Leadenhall Action ECF 588, 589.

[34] ECF 225 at 14.

[35] Leadenhall Action ECF 252, 592, 605, 606.

*Liability Company Agreement of 777 Partners LLC*, dated February 27, 2024. His claims against the remaining Debtors seek indemnification under their LLC agreements.[36]

32. On November 4, 2026, the Court held a hearing in the Chapter 11 Cases on *Advantage Capital Holdings, LLC's Motion for Relief from Automatic Stay to Issue Written Discovery in the SDNY Action* [ECF 367], at which time the Court informed the parties of its belief that Leadenhall's continued pursuit of the Leadenhall Action appeared to be "about as black letter law violation of the automatic stay as you can get."[37] Despite the Court's comments, Leadenhall has refused to voluntarily suspend its pursuit of the Leadenhall Action against Mr. Pasko for the short three-month period it imposed on the Debtors to confirm and take a chapter 11 plan effective.

**D. The Debtors' Obligation to Indemnify Mr. Pasko.**

33. The Debtors are contractually obligated to indemnify Mr. Pasko in connection with the Leadenhall Action. Under Section 9.01(b) of the Fifth Amended and Restated Limited Liability Company Agreement of 777 Partners LLC (the "**LLC Agreement**," a copy of which is attached as **Exhibit B**), 777 Partners "shall indemnify, defend and hold harmless" Mr. Pasko, a "Covered Person" and "Indemnitee," from "any and all losses, claims, demands, costs, damages, liabilities," and "expenses of any nature (including reasonable attorneys' fees and disbursements)" arising from any proceeding "arising out of or incidental to the business of the Company."[38] 600

---

[36] Mr. Pasko's proofs of claim against the remaining Debtors include claim numbers 10208 (Signal Medical), 10209 (Signal Servicing), 10212 (SuttonPark Capital), 10214 (SuttonPark Servicing), 10216 (777 Equipment Finance), 10218 (Daedalus I), 10219 (F3EA Capital), 10220 (F3EA Servicing), 10222 (NC Legacy), 10223 (Novation Ventures), 10225 (Phoenicia), 10226 (Signal National), 10228 (Singer Asset Finance), 10229 (Structured Asset Services), 10230 (Tactical Marketing), 10233 (600 Partners), 10237 (777 Asset Management), 10241 (Employee Funding), 10252 (F3EA Holdings), 10258 (Ironman Capital), 10261 (Lex Capital Holdings), 10266 (Lumiere Acquisitions), 10270 (Lumiere Financing), 10272 (Signal AHF Medical Receivables), 10273 (Signal Financial), 10276 (Signal LF Portfolio), 10280 (Signal MLH Medical Receivables), and 10286 (Thresher Acquisition).

[37] See Transcript, Nov. 4, 2026 at p. 45:8-11.

[38] *See* **Exhibit B** § 9.01(b). The version of 777 Partners' LLC Agreement in effect at the time of the conduct alleged in the Leadenhall Complaint contained a substantially identical indemnification provision.

Partners has an identical obligation.[39]

34. 777 Partners maintains a directors-and-officers liability insurance program with $45 million in aggregate limits shared by multiple insureds, including Mr. Pasko, which is being rapidly depleted by defense costs as they are incurred. The first $25 million of that tower is "Side ABC coverage," while the last $20 million is "Side A Only." By September 25, 2026, the first $20 million of "Side ABC" coverage had been exhausted, such that the operative layer of insurance was a $5 million "Side ABC" layer issued by Palomar Excess and Surplus Insurance Company ("Palomar").[40] On September 30, 2026, over the Committee's objection (ECF 293), this Court granted Palomar relief from the automatic stay (ECF 350). Palomar is believed to have paid its $5 million limits, such that only the $20 million in Side A coverage remains. Further, Palomar's filings indicate that defense-cost claims had been submitted to Palomar beyond its limits, such that substantial claims already exist against the Side A coverage.[41]

## <u>CLAIMS FOR RELIEF</u>

### Count I: Declaratory Relief
### Pursuant to Section 362(a)(3) of the Bankruptcy Code

35. Mr. Pasko incorporates by reference the allegations of paragraphs 1 through 34 as if fully set forth herein.

36. Section 362(a)(3) of the Bankruptcy Code prohibits the commencement or continuation of any act to obtain possession of, or exercise control over, the property of the debtor's

---

[39] *See* the *Fourth Amended and Restated Limited Liability Company Agreement of 600 Partners, LLC* dated February 27, 2024, ¶ 8.01(b), a copy of which is attached hereto as **Exhibit C**. The version of 600 Partners' LLC Agreement in effect at the time of the conduct alleged in the Leadenhall Complaint contained a substantially identical indemnification provision.

[40] *See* ECF 293 (summarizing coverage); ECF 322 ¶ 23 ("The Palomar Policy is the fifth and final $5 million layer of a $25 million Side ABC Tower."); *id.* at 6 n.3 ("The Committee does not contend that the underlying limits beneath the Palomar Policy are unexhausted . . . .").

[41] *See* ECF 350; ECF 230 ¶ 8; ECF 322 ¶ 27.

estate. *See* 11 U.S.C. § 362(a)(3). The Leadenhall Action includes claims for alter ego, veil piercing, unjust enrichment, and other claims based on harms to the Debtors' estates. Such claims constitute property of the Debtors' estates under section 541(a), and the continued pursuit of such claims violates section 362(a)(3).

37. Further, even if the Court were to determine that certain of Leadenhall's theories belong to Leadenhall, Leadenhall still could not litigate its complaint as pleaded without exercising control over estate claims because even Leadenhall's RICO, fraud, and conspiracy claims arise from the same alleged scheme, rest on the same alter ego allegations, and seek the same $609,529,966.82 in damages. Discovery on Leadenhall's reliance theory would inevitably reach the structure of the Debtors, the alleged double-pledging of collateral, and the movement of assets among the Debtors and their insiders—the same subject matter as the estates' alter ego, fraudulent-transfer, and asset-recovery claims. Thus, any merits ruling on those issues in the district court action would effectively adjudicate claims that belong to the estates, without the estates' participation. That is the control over estate property that section 362(a)(3) forbids. Should the Court conclude that any of Leadenhall's reliance-based claims may proceed, the Court should, at a minimum, stay discovery in the Leadenhall Action directed to these estate-owned subjects.

38. Moreover, the Fifth Circuit recognizes that the automatic stay imposed by section 362(a) may be extended to non-debtor defendants to enjoin actions in unusual circumstances, including where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. Such unusual circumstances exist here to justify extension of the automatic stay to Leadenhall's claims against Mr. Pasko because (a) an identity of interests exists between the Debtors and Mr. Pasko based on the Debtors'

indemnification obligations to Mr. Pasko, (b) the claims against Mr. Pasko are inextricably interwoven with its claims against the Debtors, presenting common questions of law and fact, such that a judgment against Mr. Pasko will, in effect, be a judgment or finding against the Debtors, (c) the continuation of the claims against Mr. Pasko will likely deplete the Debtors' existing D&O coverage before the Debtors have had a chance to evaluate, pursue, or settle the estates' own claims against Mr. Pasko, and (d) the continued litigation of Leadenhall's claims outside of these Chapter 11 Cases creates a risk of binding the Debtors through res judicata or collateral estoppel and allowing Leadenhall to use evidence generated in the Leadenhall Action to establish the Debtors' liability for the exact same claims. Accordingly, commencement or continuation of the Leadenhall Action will require the Debtors to participate in the defense to protect their own interests. Such continued piecemeal litigation would also impose divergent discovery burdens on the Debtors.

39. Accordingly, and in line with Fifth Circuit precedent with respect to application of the automatic stay, the declaratory relief requested by Mr. Pasko in this Complaint is necessary and appropriate to protect the integrity of the automatic stay and the bankruptcy proceeding.

**Count II: Declaratory Relief**
**Pursuant to Section 362(a)(1) of the Bankruptcy Code**

40. Mr. Pasko incorporates by reference the allegations of paragraphs 1 through 39 as if fully set forth herein.

41. Section 362(a)(1) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced prior to the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a)(1). Courts in the Fifth Circuit and elsewhere have recognized that the stay may apply to the prosecution of claims against non-debtors when the ultimate liquidation and recovery of claims is against the debtor.

42. The claims in the Leadenhall Action are premised upon the theory that Mr. Pasko and other individuals and entities operated as alter egos.[42] Indeed, Leadenhall contends that such parties operated as a single enterprise and makes the same allegations and asserts the same injuries against them for breach of contract, civil RICO and RICO conspiracy, fraudulent misrepresentation, civil conspiracy to commit fraud, aiding and abetting fraud, unjust enrichment, and actual and constructive fraudulent transfers.[43] Accordingly, Leadenhall's alter ego counts against Mr. Pasko, which seek to hold him liable for the Debtors' own obligations, are barred by section 362(a)(1) because they constitute an action "to recover a claim against the debtor."

**Count III – Preliminary Injunctive Relief**
**Pursuant to Sections 105 and 362 of the Bankruptcy Code**

43. Mr. Pasko incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth herein.

44. Section 105(a) authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Chapter 11 Cases, aid in the preservation of the assets of the Debtors' estates, and aid in the formulation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors. *See* 11 U.S.C. § 105(a).

45. Relief under section 105(a) of the Bankruptcy Code is proper in a chapter 11 case when necessary to protect a debtor's ability to effectively reorganize and to preserve property of the debtor's estate.

46. An injunction for the requested period is appropriate in this case because it would, e.g., prevent Leadenhall from continuing to pursue claims that belong to the Debtors' estates, avoid

[42] *See, e.g.*, **Ex. A,** Leadenhall Complaint ¶¶ 5, 247-250, 322, 332, 345, 354, 360, and 363.

[43] *See id.* at ¶¶ 313-416, although Leadenhall's fraudulent transfer claims against Mr. Pasko were dismissed.

the generation of substantial indemnification claims against the Debtors, allow the Debtors to evaluate the estates' claims before the Debtors' remaining D&O insurance is depleted, prevent the entry of findings against Mr. Pasko that would be preclusive with respect to Leadenhall's claims against the Debtors, and allow the Debtors to focus on confirming a plan without having to participate in discovery or protect the estates' interests in the Leadenhall Action.

47. Likelihood of Success on the Merits: In this context, likelihood of success turns on whether the debtor has a realistic prospect of reorganizing. Independently, Mr. Pasko is likely to succeed on his request for a declaration that the stay applies.

48. The Debtors have a reasonable or realistic likelihood of confirming a plan: Leadenhall itself agreed to provide up to $10 million in debtor-in-possession financing to fund the cases through plan confirmation, which this Court approved.[44] Granting the requested injunction, which would eliminate some of the burden on the Debtors' estates associated with the Leadenhall Action, will enhance the Debtors' prospects for bringing these Chapter 11 Cases to a successful resolution. Thus, this factor weighs in favor of injunctive relief.

49. Irreparable Harm: Irreparable harm is an actual and imminent injury for which there is no adequate remedy at law that is not speculative or remote, but actual and imminent.

50. Absent the requested injunction, the Debtors' estates will be irreparably harmed, and Mr. Pasko will be forced to defend against Leadenhall's pursuit of claims belonging to the Debtors' estates in violation of the automatic stay. Although litigation expense alone ordinarily does not constitute irreparable injury, the harm here is not mere expense: defending the Leadenhall Action depletes a finite insurance pool shared with other insureds, generates fee advancement and indemnification claims against insolvent estates, and requires Mr. Pasko to litigate estate-owned

[44] *See* Final DIP Financing Order, ECF 364.

claims that Leadenhall has no right to prosecute. A later damages remedy under section 362(k) would not be adequate: it would not restore the depleted insurance, undo any preclusive rulings, or reverse the dilution of creditor recoveries, and Mr. Pasko should not be forced to litigate estate-owned claims first and seek redress for the stay violation afterward.

51. Moreover, the insurance coverage is nowhere near adequate to cover the more than $609.5 million in damages being sought in the Leadenhall Action, and any judgment would directly result in an indemnification claim by Mr. Pasko against the Debtors. In addition, the continuation of the Leadenhall Action would further deplete the insurance policy proceeds before the Debtors have had a chance to evaluate, pursue, or attempt to resolve the estates' claims against Mr. Pasko and the other parties covered by the policy. Consequently, a failure to enjoin Leadenhall's claims against Mr. Pasko would also irreparably harm the Debtors.

52. Moreover, the claims pending against the Debtors here would be litigated piecemeal against Mr. Pasko elsewhere, liquidating claims against the Debtors *and* generating new indemnification claims. Those obligations, combined with the risks of collateral estoppel, res judicata, record taint, and discovery burdens, would effectively *force* the Debtors to participate in the Leadenhall Action, draining and diverting their limited resources. Thus, this factor also strongly supports issuance of a preliminary injunction.

53. <u>The Balance of Harms</u>: The likelihood of irreparable harm to the Debtors and Mr. Pasko in the absence of injunctive relief outweighs any harm to Leadenhall. In contrast to the immediate and irreparable harm to Mr. Pasko and the Debtors described above, the potential harm to Leadenhall is only a short delay. Indeed, under the DIP Financing Order, the Debtors must confirm and take a plan effective by February 5, 2027,[45] and the requested injunction would

[45] *See* ECF 364 at ¶ 8(b).

terminate no later than that date absent further order. The requested injunction will not deprive Leadenhall of an opportunity to pursue its claims against Mr. Pasko; instead, it would merely delay those claims by approximately three months. Further, the Debtors' creditors are benefitted by the requested injunction because a judgment against Mr. Pasko could increase the claims against the Debtors' estates through the Debtors' indemnification obligations. Thus, the balance of equities weighs in favor of granting the requested injunction.

54. Public Interest. It is in the public interest that creditors follow the Bankruptcy Code and abide by the automatic stay provision that bankruptcy affords debtors. A preliminary injunction of the Leadenhall Action is needed to avoid piecemeal litigation and facilitate the successful reorganization of the Debtors.

55. Preliminarily enjoining the Leadenhall Action as against Mr. Pasko will serve the public interest by allowing the Debtors to focus on confirming and taking a plan effective by February 5, 2027, a short three months away. Without the requested preliminary injunction, piecemeal litigation of Leadenhall's claims outside of this Court would circumvent the bankruptcy process, dissipate the value of the Debtors' estates, and detract from the Debtors' chapter 11 efforts. The requested injunction is temporary and preserves Leadenhall's claims in full and shields no party from liability on the merits. Temporarily barring Leadenhall from prosecuting its claims against Mr. Pasko is appropriate and essential to the orderly and effective administration of the Debtors' estates. This factor also weighs in favor of granting a preliminary injunction.

## **Conclusion and Request for Relief**

56. Mr. Pasko respectfully requests that this Court enter an order (a) granting the declaratory and/or injunctive relief requested herein, and (b) granting such other and further relief as the Court may deem just and proper.

Dated: November 13, 2026

Respectfully Submitted,

*/s/ Jeff P. Prostok*
Jeff Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518
Mary Taylor Stanberry
State Bar No. 24143781
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: (817) 877-4223
Email: jeff.prostok@vkhh.com
Email: suki.rosen@vkhh.com
Email: mary.stanberry@vkhh.com

-and-

Thomas A. McKay (*pro hac pending*)
New York Registration No. 5125265
**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494

*Attorneys for Steven Pasko*